PEPSI–COLA BOTTLING COMPANY OF MASON CITY, IOWA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–1838.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1981.

Decided Sept. 10, 1981.

Paul J. Spielberg, Deputy Asst. Gen. Counsel, Robert I. Tendrich, Atty., argued, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Franklin R. Sears, Sears & Parker, Fort Worth, Tex., Steven M. Carsey, Fort Worth, Tex., argued, for petitioner.

Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

This case presents an important issue of first impression for this court in the labor relations field: whether in negotiating a collective bargaining contract an unconditional offer remains open to acceptance after the other party has rejected the offer or submitted a counterproposal.[1]

The National Labor Relations Board (the Board) issued an order based on its finding that Pepsi-Cola Bottling Company of Mason City, Iowa (Pepsi-Cola or the Company) violated section 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq. (1976 & Supp. II 1978), by refusing to sign a collective bargaining agreement proposed by Pepsi-Cola and accepted, after an initial rejection, by Local 828 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). We deny the Company's

---

1. Apparently, no federal court of appeals has considered this precise issue.

petition for review and grant enforcement of the Board's order.

## I. *Background.*

The Company produces, distributes, and sells "Pepsi-Cola" in Mason City, Iowa, and surrounding areas. In December 1978, the Union initiated a campaign to organize the Company's route salesmen, warehousemen, and plant laborers. Subsequent to an election held on March 15, 1979, the Board certified the Union as the bargaining representative on April 26, 1979.

On April 4, the Union had forwarded to the Company its initial contract proposal. In June, the parties agreed on several noneconomic issues. After subsequent negotiations failed to achieve agreement on other issues, the Union began an economic strike on June 29, 1979. Approximately one-half of the unit employees participated.

During the bargaining session on June 12, the Company submitted a complete contract proposal, which included for the first time its economic proposals. Don Smith, the Company's spokesman during negotiations, told the Union that "this is a company open package offer to settle a contract and a strike." Ken Rasmus, the Union's chief representative, requested an opportunity for the membership to review the Company's proposal.

On July 16, Rasmus telephoned Smith, advising him that "the membership had rejected the offer, that the members were not interested in the company's offer, that the language was not there, the money was not there, and that we had lots to talk about."

The parties held additional bargaining sessions on July 18 and 19. Rasmus advised the Company that the Union's April 4 proposal constituted its counter-offer to the Company's July 12 proposal. At these sessions, the parties did not discuss the July 12 proposal and the Company did not expressly withdraw its contract proposal.

On July 26, a federal mediator advised the Company that the Union had requested assistance from the mediation service. The Company agreed to meet with the mediator and the Union on August 8. On July 30, however, the Union voted to approve the Company's July 12 proposal. That same day, Rasmus telephoned Smith to advise him of the Union's acceptance of the Company's offer. Smith replied, "[Y]our counter proposal knocked that off the table; there isn't any offer." Thereafter, the Company sent the Union a telegram, which stated:

YOUR NOTICE THIS AFTERNOON BY PHONE IS NOT ACCEPTABLE IN THAT THE OFFER WAS MADE IN EFFORTS TO SETTLE A STRIKE AND MINIMIZE THE CONSEQUENCES OF THE STRIKE AND WHEN REJECTED BY THE UNION'S SUBSEQUENT COUNTER PROPOSAL IT NO LONGER REMAINED ON THE TABLE AS AN OFFER OF SETTLEMENT FOR THE UNION TO ACCEPT OR REJECT.

At an August 8 meeting with the federal mediator, each party merely reiterated its position—the Union expressing its acceptance of the July 12 offer, and the Company indicating that the offer had lapsed.

The Union then filed an unfair labor practice, alleging that the Company violated various sections of the National Labor Relations Act: section 8(a)(1) by making coercive statements to its employees; section 8(a)(3) by refusing to reinstate four strikers following their unconditional offer to return to work; and section 8(a)(5) by withdrawing its complete contract proposal after acceptance by the Union. The administrative law judge found in favor of the Union on all three charges and the Board affirmed. *Pepsi-Cola Bottling Co. of Mason City, Iowa*, 251 NLRB No. 28, 105 LRRM 1119 (1980).

The Company now seeks review of that portion of the Board's order requiring the Company to execute the July 12 contract proposal. The Board cross-applies for enforcement of its order. We grant enforcement of the Board's order.

## II. *Discussion.*

The statutory duty to bargain in good faith, as defined in sections 8(a)(5) and 8(d)

of the Act,[2] includes "the execution of a written contract incorporating any agreement reached if requested by either party." Section 8(d) of the Act, 29 U.S.C. § 158(d) (1976). The administrative law judge, in concluding that Pepsi-Cola violated section 8(a)(5) by refusing to execute a written agreement, stated:

> [A] complete package proposal made on behalf of either party through negotiations remains viable, and upon acceptance *in toto* must be executed as part of the statutory duty to bargain in good faith, unless expressly withdrawn prior to such acceptance, or defeased by an event upon which the offer was expressly made contingent at a time prior to acceptance. Respondent in the instant case took no such steps ,and when the Union abandoned all collateral demands, and elected to accept this complete package, a binding agreement was consummate.

Pepsi-Cola now contends that the administrative law judge applied the improper rule of law in finding that the parties reached an agreement.

■ The Company first asserts that traditional principles of contract law govern the formation of collective bargaining agreements and, therefore, that the Union's unequivocal rejection of the Company's proposal terminated the July 12 offer. We disagree. The rule is well established that technical rules of contract do not control whether a collective bargaining agreement has been reached. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 914–15, 11 L.Ed.2d 898 (1964); *NLRB v. Truckdrivers, Etc., Union No. 100*, 532 F.2d 569, 571 (6th Cir.), *cert. denied*, 429 U.S. 859, 97 S.Ct. 160, 50 L.Ed.2d 137 (1976); *NLRB v. Donkin's Inn, Inc.*, 532 F.2d 138, 141–42 (9th Cir.), *cert. denied*, 429

U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179 (1976). The Company argues, however, that this court should establish an exception to the rule and apply common law rules of offer and acceptance in the collective bargaining setting.

In a private commercial setting, the parties voluntarily contract with each other. Traditional contract law therefore provides that an offer terminates if rejected by the offeree, thus allowing the offering party free to strike a bargain elsewhere, with no danger of being bound to more than one contract. In contrast, the National Labor Relations Act compels the employer and the duly certified union to deal with each other and to bargain in good faith. Upon rejection of an offer, the offeror may not seek another contracting party. As explained by the Supreme Court, "The choice is generally not between entering or refusing to enter into a relationship, for that in all probability preexists the negotiations." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1959).

■ Thus, the common law rule that a rejection or counterproposal necessarily terminates the offer has little relevance in the collective bargaining setting. In addition, this contract principle runs counter to federal labor policy which encourages the formation of collective bargaining agreements. We therefore agree with the Board's policy, as stated in its brief, that

> a contract offer is not automatically terminated by the other party's rejection or counterproposal, but may be accepted within a reasonable time unless it was expressly withdrawn prior to acceptance, was expressly made contingent upon some condition subsequent, or was sub-

---

2. *Section 8 of the Act provides in pertinent part:*

> (a) *Unfair labor practices by employer*
> It shall be an unfair labor practice for an employer—
>
> *   *   *   *   *   *
>
> (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title [section 9(a) of the Act].

*   *   *   *   *   *

(d) *Obligation to bargain collectively*
For the purposes of this section, to bargain collectively is the * * * execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession * * * [.] [29 U.S.C. §§ 158(a)(5) and (d) (1976).]

ject to intervening circumstances which made it unfair to hold the offeror to his bargain.[3]

Under this policy, an offer, once made, will remain on the table unless explicitly withdrawn by the offeror or unless circumstances arise which would lead the parties to reasonably believe that the offer had been withdrawn.[4]

The Company asserts, in the alternative, that the administrative law judge failed to follow the Board's policy. The Company first contends that the administrative law judge improperly found the offer to be unconditional. It suggests that because it made the July 12 offer near the beginning of the strike, the offer should be read to impose a condition of immediate acceptance. We disagree. Although Smith presented the proposal as an "offer to settle a contract and a strike," the offer contained no express time conditions for acceptance.

Pepsi-Cola further asserts that the administrative law judge failed to consider whether the Union accepted the offer within a reasonable time and whether intervening circumstances made the contract unfair. The Company argues that permitting the Union to accept the offer would be inequitable because the Union rejected the offer and continued the strike with clear knowledge that the Company made its proposal to end the strike. The Company also argues

that it should not be held to its July 12 offer because the Union's strike was losing support.

Here, the acceptance came within three weeks of the offer. This period of time appears clearly reasonable, particularly because several bargaining sessions occurred during this time at which the Company could have rescinded its offer. *Cf. NLRB v. Lucas County Farm Bureau Cooperative Association*, 218 NLRB 1150, 89 LRRM 1510 (1975), *supplemented*, 218 NLRB 1155, 91 LRRM 1367 (1976), *enf'd*, 557 F.2d 1227 (6th Cir. 1977) (three-month period after offer during which no bargaining took place).

We also reject appellant's contention that changed circumstances nullified the offer. As stated previously, the record does not support the Company's suggestion that the Union knew the July 12 offer was conditioned on immediate acceptance. In addition, a mere change in bargaining strength does not make it unfair to hold the Company to its July 12 offer.[5]

III. *Conclusion.*

■ In summary, we conclude that the July 12 proposal remained viable because the Company failed to expressly withdraw its offer prior to acceptance and because the circumstances do not indicate that the parties could have reasonably considered

---

3. The Company asserts that this rule is contrary to Board precedent which holds that the power to accept an offer does not survive a rejection unless the evidence shows that the offeror intended or gave the appearance of intending the offer to remain open. *See Penasquitos Gardens, Inc.*, 236 NLRB 994, 98 LRRM 1335 (1978), *enf'd*, 603 F.2d 225 (9th Cir. 1979); *Worrell Newspapers*, 232 NLRB 402, 97 LRRM 1029 (1977); *Lane Constr. Corp.*, 222 NLRB 194, 91 LRRM 1337 (1976); *Lucas County Farm Bureau Cooperative Assoc.*, 218 NLRB 1150, 89 LRRM 1510 (1975), *supplemented*, 218 NLRB 1155, 91 LRRM 1367 (1976), *enf'd*, 557 F.2d 1227 (6th Cir. 1977). The Board attempts to distinguish these decisions factually and cites *Penasquitos Gardens, Inc., supra*, as consistent with the present case. After reviewing these cases, we note some inconsistency in the Board's position. We believe, however, that this lack of clarity merely demonstrates the Board's development of its policy on a case-by-case basis.

4. The Board's policy seems an eminently practical one in the context of labor negotiations. Normally, each party offers its own proposal and these proposals remain on the table for further negotiations.

5. The Board asserts that a withdrawal of terms, offered only three weeks earlier, because of the Union's diminishing strength, suggests an intent to avoid agreement and subvert the Union, thus demonstrating a failure to bargain in good faith. Such an allegation was not previously raised and therefore is not before us. We note that under a recent Board decision, "[i]t is not illegal for an employer who had weathered a strike to capitalize upon its new found strength to secure contract terms it desires." *Hickinbotham Bros. Ltd.*, 254 NLRB 22 (1981). In *Hickinbotham*, the employer expressly withdrew and changed its earlier bargaining proposals before the Union's acceptance.

the offer withdrawn. Thus, we affirm the Board's finding that the Company violated section 8(a)(5) of the Act by failing to execute the agreement. We, therefore, enforce its order requiring Pepsi-Cola to sign the contract, to give it retroactive effect from July 30, 1979, and to grant appropriate backpay. We also enforce the Board's order requiring the Company to cease and desist from interfering with, restraining, or coercing employees in the exercise of their section 7 rights and to grant appropriate reinstatement and backpay.