**PRESTO CASTING COMPANY,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 82–7386.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1983.

Decided June 16, 1983.

Patrick W. Jordan, McLaughlin & Irvin, San Francisco, Cal., for petitioner.

Before HUG and FARRIS, Circuit Judges, and GADBOIS,* District Judge.

GADBOIS, District Judge:

This matter is before the court on the petition of Presto Casting Company to review and set aside an order of the National Labor Relations Board, and the cross-application of the Board for enforcement of the order. Both petitions were timely filed and jurisdiction is afforded by 29 U.S.C. § 160(e) and (f).

Presto is a metal casting firm which operates a foundry and heat treating plant in Phoenix, Arizona. On November 12, 1980, the Board certified the United Steelworkers of America as the collective bargaining representative of Presto's production and maintenance employees. Commencing on December 15, 1980 and through February 26, 1981, the parties met a number of times for the purpose of negotiating a collective bargaining agreement. At Presto's insistence, the parties treated non-economic and economic matters separately. Initial negotiations were limited to non-economic items. Negotiations broke down when a personality problem developed between Garza, negotiator for the company, and Smith, the union spokesman. On February 10, 1981, the union met with Presto's new negotiator, Long. The latter had prepared a draft of the company's non-economic proposal and presented it to the union. After some revisions the non-economic issues were tentatively resolved, subject to an agreement on economic issues.

On February 17, Long presented the company's economic package to Smith. During the course of a marathon bargaining session, the parties exchanged proposals and

William Wachter, Washington, D.C., for respondent.

* The Honorable Richard A. Gadbois, Jr., United States District Judge, Central District of California, sitting by designation.

counter-proposals covering a wide range of economic issues. Late in the meeting Long submitted his "final final" offer. The union made a counter-proposal which Long rejected. The union again proffered a counter-proposal, but Long reiterated that Presto had made its ultimate offer. The parties agreed to meet again on February 26. At that meeting the union gave Presto another proposal on economic matters, but again Long rejected it. That evening the union conducted a strike vote. The employees rejected the Presto proposal. A strike commenced on February 27 and lasted until March 6. Smith decided to terminate the strike on March 6 because a majority of the employees had in fact returned to work. A union mailgram accepting the company's final offer was sent on the afternoon of March 6. Garza, who had earlier heard of the union's acceptance, informed Long that the union was accepting the company's offer. Long notified the federal mediator that he wanted the proposal withdrawn from the bargaining table. The union mailgram was received at Presto on March 7. Acting on the union's March 6 acceptance of the agreement, those employees who had remained on strike reported to the company's main plant on March 9, unconditionally seeking reinstatement. Presto has refused to acknowledge existence of an agreement or to conform to any of its provisions.

At various relevant times the union filed with the Board unfair labor practice charges which complained of Presto's:

(i) failing to acknowledge and sign the March 6 "agreement" with the union; (Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5))

(ii) failing to reinstate economic strikers who had not been permanently replaced; (Sections 8(a)(1) and (3) of the Act, 29 U.S.C. § 158(a)(1) and (3))

(iii) unilateral discontinuance during negotiations of the company's past practice of holiday distributions; (Sections 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5))

(iv) requiring returning economic strikers to sign a company-prepared request for reinstatement.

The Administrative Law Judge found for the union on these charges. The Board affirmed the ALJ's findings of fact and conclusions of law and adopted his recommended order.

The principal issue in this case is whether the Board erred in finding that Presto's final contract offer was still susceptible of acceptance on March 6, notwithstanding that it was subjected to two counteroffers and a rejection, followed by a strike. The law is clear that we must affirm a decision of the Board which relies on findings of fact supported by substantial evidence. *NLRB v. Tomco Communications, Inc.,* 567 F.2d 871, 876 (9th Cir.1978); and *Capitol-Husting Co., Inc. v. NLRB,* 671 F.2d 237, 242–243 (7th Cir.1982).

■ Presto urges us to apply general legal principles of contract formation and to hold that counteroffers, rejections and a subsequent change of relative bargaining positions in favor of the offeror constitute withdrawal of the offer and that a purported acceptance thereafter is wholly ineffective. Indeed, this court, in *Lozano Enterprises v. NLRB,* 327 F.2d 814, 819 (9th Cir. 1964), stated:

We do not at all mean to hold that, in general, the normal rules of offer and acceptance are not determinative as to whether an agreement has been reached in a collective bargaining situation ...

As *Lozano* observes, however, strict reliance on that generality is an overly simplistic approach.[1] The more considered view is that adopted in *Pepsi-Cola Bottling Co., Etc. v. NLRB,* 659 F.2d 87 (8th Cir.1981). There the court confronted a situation in which the employer refused to acknowledge an agreement based on its own proposal, which was initially rejected but accepted shortly thereafter. The court noted that technical rules of contract formation do not

---

**1.** *Lozano* holds that intentional failure to deliver a written contract signed by the parties is ineffective to bar its enforcement. 327 F.2d at 819.

confine collective bargaining, because the parties are obliged by their relationship to deal exclusively with each other and because policies of the Act dictate that this process not be encumbered by undue formalities. *Id.* at 89. *Pepsi-Cola* held that an offer is not automatically terminated by rejection or counter-proposal. Rather, it may be accepted within a reasonable time unless (i) it was expressly withdrawn; (ii) it was made expressly contingent on a condition subsequent; or (iii) circumstances intervening between offer and purported acceptance would characterize the latter as simply unfair. *Id.* at 89–90. We now adopt that holding as the law of this Circuit.[2]

■ Applying the above rule to the facts in this case, we find that substantial evidence supports the Board's conclusion that Presto's offer was not withdrawn. The company makes much of the ground rules set at the beginning of the bargaining between Long and Smith, at which time it was agreed that "all bets were off" if the negotiations broke down. It certainly could be implied that any company offer on the table when negotiations terminated was automatically revoked. The Board determined otherwise, however, and it has the expertise to determine the reasonable expectations of the parties during the period in issue. The "all bets are off" statement was made early in the bargaining process and was not used in connection with the impasse reached on February 26. Further, there is some evidence that Presto itself thought that the offer was still open. When Long heard on March 6 that the union had sent a mailgram of acceptance, he tried expressly to withdraw the offer.

Presto complains that the Board's order is unfair, since it takes away the economic advantage earned by its having weathered the strike. The decision in *Pepsi-Cola Bottling Co., Etc. v. NLRB,* correctly states the rule that a mere change in bargaining strength does not create such unfairness as to negate acceptance. 659 F.2d at 90.

The Presto offer, which was not contingent on a subsequent condition, was never the subject of an effective express withdrawal. It was accepted within a reasonable time, and the intervening events do not render recognition of the agreement as unfair. Whether the agreement was in fact reached by the parties is a question for the Board to determine. *Capitol-Husting Co., Inc. v. NLRB,* 671 F.2d at 243. Since the Board's determination in this case is supported by substantial evidence we cannot declare the same to be erroneous, even if we might reach a different conclusion on the same evidence. *Id.; accord, NLRB v. Nevis Industries, Inc.,* 647 F.2d 905, 908 (9th Cir.1981).

■ The second issue raised by Presto's appeal concerns its alleged failure timely to reinstate several economic strikers. Presto complains of the Board's finding of such failure in that the issue was not raised in the complaint against it. It is clear that the Board may find an unfair labor practice even though not specifically charged in the complaint, if in fact the issue has been fairly and fully litigated. *Alexander Dawson, Inc. v. NLRB,* 586 F.2d 1300, 1304 (9th Cir.1978). Here, the complaint charged Presto with unfair labor practices connected with the strike itself. Presto was not prepared at the hearing to come forward with valid reasons for failure to reinstate economic strikers. Under these circumstances Presto did not have the opportunity to litigate the issue fairly, and enforcement of the Board's order in this respect must be denied.

■ The remaining issues involve Board determinations that Presto violated the Act by requiring returning workers to sign a reinstatement form and unilaterally abolishing a minor employee benefit. We affirm these orders. On the first issue, there was substantial evidence to support the finding that reinstatement was condi-

---

2. This rule is fully consistent with decisions of this court dealing with contract formation in the context of labor relations. *See Lozano Enterprises v. NLRB,* 327 F.2d at 818–19; *NLRB*

*v. Electra-Food Machinery, Inc.,* 621 F.2d 956, 958 (9th Cir.1980); and *NLRB v. Donkin's Inn, Inc.,* 532 F.2d 138, 141–42 (9th Cir.1976), *cert. den.,* 429 U.S. 895, 97 S.Ct. 257, 50 L.Ed.2d 179.

tioned upon signing the form. When the striking employees made an unconditional offer to return to their employment, Presto was obligated to make them an unconditional offer of reinstatement. *See Shelly & Anderson Furniture Mfg. Co., Inc. v. NLRB,* 497 F.2d 1200, 1204 (9th Cir.1974). With respect to the employee benefit situation, Presto concedes technical violation of the Act but argues that it was *de minimis* and later cured. The remedial authority of the Board, however, is broad and discretionary, and it is not an abuse of discretion to make an order to deter future misconduct despite a claim of compliance. *NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547.

Enforcement of the Board's order is granted in part and denied in part.