# IN THE SUPREME COURT OF IOWA

No. 17–2093

Filed May 17, 2019

**UE LOCAL 893/IUP,**

   Appellee,

vs.

**STATE OF IOWA,**

   Appellant.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The State appeals a summary judgment enforcing a collective bargaining agreement and a prior order denying its motion to dismiss or stay the action in favor of pending agency proceedings. **AFFIRMED.**

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and Julia S. Kim, Assistant Attorney General, for appellant.

Charles Gribble and Christopher Stewart of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, and Nathan Willems of Rush & Nicholson, Cedar Rapids, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court correctly granted summary judgment enforcing a collective bargaining agreement between the State of Iowa and a public employee union. The union argues its negotiators accepted the State's pending offer and the union membership voted to ratify the terms, resulting in an enforceable collective bargaining agreement. The union filed this action in district court to enforce the agreement pursuant to Iowa Code section 20.17(5) (2017). The State moved to dismiss or stay the action in favor of administrative proceedings pending at the Public Employment Relations Board (PERB). The State argued that an Iowa Administrative Code rule requires the State to vote to ratify after the union vote and that without the State's vote, no contract was formed. *See* Iowa Admin. Code r. 621—6.5(3) (2017).[1] The State argued the union failed to exhaust its administrative remedies and that the court should defer to PERB under the doctrine of primary jurisdiction. The union resisted, arguing Iowa Administrative Code rule 62—6.5(3) is invalid and the district court action should proceed in light of the agency's limited enforcement powers. The district court denied the State's motion without a definitive decision on rule 621—6.5(3), and both parties moved for summary judgment. PERB stayed its own agency proceedings pending resolution of the court proceedings.

The district court granted the union's motion for summary judgment, noting in its ruling the State did not rely on rule 621—6.5(3) in resisting or moving for summary judgment. The State appealed without filing a motion to amend the judgment, and we retained the case. On

---

[1]This rule was renumbered in August 2017 prior to the district court's summary judgment and was formerly Iowa Administrative Code rule 621—6.4(3). We will refer to the rule by its current number throughout this opinion.

appeal, the State renews its arguments relying on rule 621—6.5(3). The union argues the State failed to preserve error. We agree error was not preserved and decline to reach the State's rule 621—6.5(3) challenge to the agreement. We hold the district court had subject matter jurisdiction and correctly ruled the State had not withdrawn its offer before the union's acceptance and ratification resulted in an enforceable collective bargaining agreement. We also affirm the district court's rulings rejecting the primary-jurisdiction and exhaustion doctrines, noting PERB's limited enforcement powers. Accordingly, we affirm the district court's judgment against the State.

## I. Background Facts and Proceedings.

The facts are stipulated in the summary judgment record and are viewed in the light most favorable to the State. UE Local 893/IUP (UE) is a union representing two bargaining units comprised of State of Iowa employees: a science unit and a social services unit. The first collective bargaining agreement UE and the State negotiated for the social services unit went into effect on July 1, 1984, and the first agreement negotiated for the science unit went into effect on July 1, 1995. Thereafter, the parties negotiated successor two-year collective bargaining agreements for each bargaining unit. Most recently, UE and the State entered into collective bargaining agreements that were effective July 1, 2015, through June 30, 2017.[2]

In May 2016, the parties agreed to a schedule for the upcoming negotiations for successor agreements to go into effect on July 1, 2017. UE presented its initial offer on December 6, and the State presented its initial offer on December 20. The cover page of the State's offer noted,

---

[2]The record does not indicate whether the State voted to ratify any of the prior collective bargaining agreements.

"Throughout the course of these negotiations, the State reserves the right to add to, delete from and/or revise this proposal."

The parties met for a negotiation session on January 10, 2017. During this session, UE asked questions about the State's insurance proposal, but neither party deviated from its initial offer. The State claims it did not want to deviate from its offer because it was waiting to see whether the legislature would amend the Public Employment Relations Act (PERA), Iowa's collective bargaining statute, codified at Iowa Code chapter 20. The parties agreed to cancel bargaining sessions scheduled for January 11, 18, and 19.

On February 9, House File 291 was introduced in the Iowa House of Representatives. H.F. 291, 87th G.A., 1st Sess. (Iowa 2017). House File 291 made significant amendments to PERA by substantially limiting the number of mandatory bargaining topics for most public employees, including the employees in UE's bargaining units. The Governor signed House File 291 into law on February 17, and the amendments took effect immediately.[3] 2017 Iowa Acts ch. 2 (codified in part at Iowa Code ch. 20 (2018)).

On February 10, one week before House File 291's amendments went into effect, UE sent a letter to the Iowa Department of Administrative Services disclosing that UE's negotiation committee had unanimously voted to accept the State's December 20, 2016 offer. The State did not respond. On February 14, UE's members voted to ratify the State's offer. UE notified the State of the ratification vote the following day. The State later stipulated that "[a]t no time prior to ratification by UE on February

---

[3]The amendments invalidated collective bargaining agreements still under negotiation. H.F. 291, 87th G.A., 1st Sess. § 25 (Iowa 2017) (providing that collective bargaining agreements not completed by that date "shall not become effective").

14, 2017 of the State's December 20, 2016 initial proposal did the State withdraw its December 20, 2016 initial proposal." Nevertheless, the State refused to acknowledge that an enforceable voluntary collective bargaining agreement had been formed.

On February 15, UE filed a prohibited-practice complaint against the State with PERB. The following day, the State filed its own prohibited-practice complaint with PERB. PERB has stayed these prohibited-practice complaints pending resolution of this court action.

On February 21, UE filed a petition in district court to enforce the terms of the collective bargaining agreement pursuant to Iowa Code section 20.17(5) (2017). The State filed a preanswer motion to dismiss UE's petition. The State argued the district court lacked primary jurisdiction and UE had failed to exhaust its administrative remedies. The State argued that Iowa Administrative Code rule 621—6.5(3) governed whether a collective bargaining agreement had been formed and the interpretation and application of that rule was central to the resolution of that issue. The State argued that those issues were pending before PERB in the two prohibited-practices complaints. For that reason, the State argued PERB should have primary jurisdiction to resolve these issues. The State also argued that because the prohibited-practice complaints remained pending with PERB, UE had failed to exhaust its administrative remedies.

The district court denied the State's motion to dismiss. The court declined to grant PERB primary jurisdiction to determine whether the collective bargaining agreement was enforceable. The court decided that the prohibited-practices complaints pending before PERB did not invoke the doctrine of primary jurisdiction because both the court and PERB could exercise their authority concurrently. The court concluded, "The

ability of the defendant to challenge the existence of an enforceable collective bargaining agreement based on rule [621—6.5(3)] will be for the court to decide[.]" The court, however, did not decide the validity or effect of that rule in its dismissal order.

Both parties filed motions for summary judgment. The parties filed a stipulation of facts. The State again argued that PERB had primary jurisdiction and asked the district court to stay its proceedings pending PERB's resolution of the prohibited-practice complaints. The State also asked the court to apply traditional contract principles and find that UE had rejected the State's initial offer and made a counteroffer by suggesting different terms. Alternatively, the State argued that even under the standard set out in *Pepsi-Cola Bottling Co. of Mason City v. NLRB*, 659 F.2d 87, 90 (8th Cir. 1981), the circumstances were such that UE should reasonably have believed the State's offer was withdrawn. The State did not mention Iowa Administrative Code rule 621—6.5(3) in its motion for summary judgment, nor did the State argue that the collective bargaining agreement was unenforceable because the State never held a ratification vote.

UE argued in its motion for summary judgment that, applying ordinary contract principles, there was a valid offer and acceptance of the State's December 20 offer. UE argued it did not reject the State's proposal by merely inquiring about additional or alternative terms.

The district court granted summary judgment in favor of UE. The court declined to stay the proceedings under the doctrine of primary jurisdiction. The district court expressly noted, "Unlike in its motion to dismiss, the [State] makes no argument on summary judgment regarding the impact of regulations promulgated by PERB requiring the public employer to approve the ratified agreement before it is effective."

The district court adopted the *Pepsi-Cola* standard for evaluating the formation of a collective bargaining agreement. Under this standard, "an offer, once made, will remain on the table unless explicitly withdrawn by the offeror or unless circumstances arise which would lead the parties to reasonably believe that the offer had been withdrawn." *Pepsi-Cola*, 659 F.2d at 90. The district court concluded the State did not explicitly withdraw its offer, nor were the circumstances such that UE would reasonably believe the offer had been withdrawn. For that reason, the State's offer remained on the table and was available for UE to accept. The court found no dispute of fact with regard to UE's acceptance of the offer and the membership's ratification and found that a valid, enforceable collective bargaining agreement existed. The State appealed, and we retained the appeal.

## II. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012) (quoting *Dier v. Peters*, 815 N.W.2d 1, 4 (2012)). We review a district court's ruling on a motion for summary judgment for correction of errors at law. *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). "We view the evidence in the light most favorable to the nonmoving party." *Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 895 (Iowa 2014). "The court must consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record." *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 460 (Iowa 2017) (quoting *McIlravy v. N. River Ins.*, 653 N.W.2d 323, 328 (Iowa 2002)).

"A 'court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.' " *Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) (quoting *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006)).

### III. Preservation of Error as to the State's Challenge Based on Iowa Administrative Code Rule 621—6.5(3).

We first decide whether Iowa Administrative Code rule 621—6.5(3) is at issue in this appeal. UE argues the State failed to preserve error because the State never raised the rule in the summary judgment proceedings. The State argues on appeal that no collective bargaining agreement exists because the State never voted to ratify the agreement as required by the rule, which provides,

> **6.5(3)** *Acceptance or rejection by public employer.* The public employer shall, within ten days of the tentative agreement, likewise meet to accept or reject the agreement, and shall within 24 hours of the acceptance or rejection serve notice on the employee organization of its acceptance or rejection of the proposed agreement; however, the public employer shall not be required to either accept or reject the tentative agreement if it has been rejected by the employee organization.

Iowa Admin. Code r. 621—6.5(3). The ten-day deadline does not apply to the State. *Id.* r. 621—6.5(4)(*b*). The State claims it preserved error because it raised the rule in its preanswer motion to dismiss denied by the district court. Alternatively, the State argues the rule deprives the court of subject matter jurisdiction, an issue that can be raised at any time.

We begin our analysis with basic principles of error preservation. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This doctrine is based on the principle that "[i]t is not a sensible exercise of

appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination[].' " *Id.* (quoting *Yee v. City of Escondido*, 503 U.S. 519, 538, 112 S. Ct. 1522, 1534 (1992)). If a party properly raises an issue and the district court fails to rule on it, the party "must file a motion requesting a ruling in order to preserve error for appeal." *Id.*

Our doctrine of error preservation "requires a party seeking to appeal an issue presented to, but not considered by, the district court to call to the attention of the district court its failure to decide the issue." *Id.* at 540.

> The claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it.

*Id.* "[A] party may use any means to request the court to make a ruling on an issue." *Id.* at 539.

> [E]ven if a rule 179(b) [now rule 1.904(2)] motion [to reconsider, enlarge, or amend] is not available to a party to challenge a district court ruling . . . that party must still request a ruling from the district court to preserve error for appeal on an issue presented but not decided.

*Id.*

In this case, we lack a district court ruling deciding the validity of Iowa Administrative Code rule 621—6.5(3) or the rule's effect on contract formation. "A supreme court is 'a court of review, not of first view.' " *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7, 125 S. Ct. 2113, 2120 n.7 (2005)) (declining to reach issues not decided in district court's

summary judgment ruling). We generally will not decide an issue the district court did not decide first in the case on appeal.[4]

In its ruling denying the State's motion to dismiss, the district court noted, "The ability of the defendant to challenge the existence of an enforceable collective bargaining agreement based on rule [621—6.5(3)] will be for the court to decide[.]" The court, however, rejected the State's primary-jurisdiction and exhaustion arguments without making any definitive, unequivocal ruling on rule 621—6.5(3). Rather, the district court's order denying the motion to dismiss essentially reserved ruling on the validity of rule 621—6.5(3) and its impact on contract formation in this case. This order was insufficient to preserve error. *See Meier*, 641 N.W.2d at 540–41 (holding jurisdictional issue raised as one of two grounds in motion to dismiss was not preserved for appellate review when district court denied motion on second ground without deciding the jurisdictional issue).

In other contexts, we have emphasized that a party receiving a preliminary ruling that does not unequivocally decide an issue must do more to preserve the issue for appellate review. *See Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 89–90 (Iowa 2011) (explaining when a ruling on a motion in limine preserves error). There, we discussed the general "rule that 'error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the

---

[4]We adjudicated the validity of Iowa Administrative Code rule 621—6.5(3) in *Service Employees International Union, Local 199 v. State*, ___ N.W.2d ___ (Iowa 2019). We held the rule had the force of law when applied to the Iowa Board of Regents, an agency subject to the open-meetings law requirements codified in Iowa Code chapter 21. *See id.* at ___. We relied heavily on the interplay between chapters 20 and 21 in concluding the board of regents was required to vote to ratify the collective bargaining agreement. *Id.* That case is distinguishable because unlike the board of regents, the State in these contract negotiations with UE does not a have a decision-making board subject to the open meetings requirements.

evidence is offered at trial.' " *Id.* (quoting *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006)). However, an order in limine that is definitive and decides the ultimate issue preserves error. *Id.* at 90. The ruling denying the State's motion to dismiss merely noted the court would subsequently decide the rule 621—6.5(3) issue, without deciding it in the dismissal order. Accordingly, the State needed to present the issue again to preserve it for appeal.[5]

Nevertheless, the State, in its subsequent motion for summary judgment, failed to cite rule 621—6.5(3) and did not argue that the contract was invalid because the State did not vote to ratify it. In a footnote in the summary judgment ruling, the district court observed, "Unlike in its motion to dismiss, the [State] makes no argument on summary judgment regarding the impact of regulations promulgated by PERB requiring the public employer to approve the ratified agreement before it is effective." This was a red flag that the court had not decided the issue. Yet the State failed to file a second or supplemental motion for summary judgment raising that agency rule. Nor did the State file a motion to amend or enlarge under Iowa Rule of Civil Procedure 1.904(2) or otherwise ask the district court to decide whether there was a valid collective bargaining agreement in light of rule 621—6.5(3). We conclude that the State failed to preserve error on its rule 621—6.5(3) challenge to contract formation. *See Meier*, 641 N.W.2d at 541 (holding defendant waived appellate review

---

[5]Relatedly,

> [w]e have "consistently" held an error in overruling a motion to dismiss [in a bench trial] or for directed verdict [in a jury trial] made at the close of claimant's evidence and not renewed at the end of the trial is deemed waived.

*Mueller v. St. Ansgar State Bank*, 465 N.W.2d 659, 660 (Iowa 1991) (quoting *Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp.*, 210 N.W.2d 532, 535 (Iowa 1973)) (also holding error not preserved by pretrial denial of motion for summary judgment).

of issue not reached by the court when defendant failed to renew his request for a ruling on that issue).

We decline to reach the rule 621—6.5(3) challenge in the guise of a subject matter jurisdiction analysis. The State is correct that "[a] party can raise subject matter jurisdiction at any time in the proceeding." *In re Estate of Falck*, 672 N.W.2d 785, 789 (Iowa 2003) (explaining difference between court's authority and subject matter jurisdiction). " 'Subject matter jurisdiction' refers to the power of a court to deal with a class of cases to which a particular case belongs." *Id.* Subject matter jurisdiction may be conferred by a legislative enactment or by the constitution. *Id.* The legislature conferred subject matter jurisdiction on the district courts to enforce collective bargaining agreements. *See* Iowa Code § 20.17(5) ("Terms of any collective bargaining agreement may be enforced by a civil action in the district court . . . .").

The State argues that because no valid contract was formed without the State's ratification vote required under rule 621—6.5(3), there was no contract to "enforce" as required for subject matter jurisdiction under Iowa Code section 20.17(5). Under the State's theory, every defense to formation of a public collective bargaining agreement becomes a question of subject matter jurisdiction that could be raised for the first time on appeal. We disagree. In our view, the court's statutory power to enforce the terms of a collective bargaining agreement necessarily subsumes the power to adjudicate the opposing party's challenges to the contract's validity. The party seeking enforcement must prove the existence and terms of the contract. If there is a failure of proof, or if the opposing party prevails on a contract defense, the resulting adjudication is on the merits, not for lack of subject matter jurisdiction. *See Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 458 (Iowa 2017)

("[J]urisdiction of the subject matter is conferred by operation of law, and not by act of the parties . . . . It cannot be ousted by act of the parties, if it exists, nor conferred by such acts, if it does not exist." (quoting *Pottawattamie Cty. Dep't of Soc. Servs. v. Landau,* 210 N.W.2d 837, 843 (Iowa 1973))).

The legislature expressly conferred subject matter jurisdiction on the district court for contract enforcement in section 20.17(5) and conferred PERB with rulemaking authority "to carry out the purposes" of chapter 20. Iowa Code § 20.6(5). We do not believe PERB's rules on contract ratification define or narrow the court's *subject matter jurisdiction. See Segura,* 889 N.W.2d at 225 ("[W]hile exhaustion of administrative remedies is a jurisdictional prerequisite, and our legislature clearly intended this process be governed by administrative rule, we have not held the legislature intended to delegate the authority to set the jurisdiction of our courts."). The statute controls*. See id.*

We conclude that Iowa Administrative Code rule 621—6.5(3) provides a merits-based defense to contract formation, which the State waived by failing to raise the rule in the summary judgment proceedings. *See Meier,* 641 N.W.2d at 541, n.2 (concluding that issue as to court's power to reinstate action after voluntary dismissal involved the authority of the court rather than subject matter jurisdiction).

The State relies in part on federal labor law, which actually supports UE. In *Sergeant Bluff-Luton Education Ass'n v. Sergeant Bluff-Luton Community School District,* we observed that Iowa Code section 20.17(5) is similar to section 301 of the Federal Labor Management Relations Act (LMRA). 282 N.W.2d 144, 146 (Iowa 1979). Section 301 provides, "*Suits for violation of contracts* between an employer and a labor organization representing employees in an industry . . . may be brought in any district

court of the United States." *Id.* at 146 (emphasis added) (quoting 29 U.S.C § 185(a)). This statute confers subject matter jurisdiction in federal district court over suits for violations of collective bargaining agreements. *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 656, 118 S. Ct. 1626, 1628–29 (1998). " 'Suits for violation of contracts' under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated." *Id.* at 657, 118 S. Ct. at 1629. But once the plaintiff alleges a violation, the court may "adjudicate the validity of [the] contract under § 301(a)." *Id.*

> Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with section 301(a), adjudicate that defense.

*Id.* at 658, 118 S. Ct. at 1629. UE's action falls within this class of cases.

Federal courts continue to recognize that cases like UE's fall within the subject matter jurisdiction conferred by § 301(a). A lawsuit alleging breach of a collective bargaining agreement and stating colorable claims is sufficient to establish subject matter jurisdiction under § 301(a). *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011)*; see also Houston Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 405–06 (5th Cir. 2014) ("[T]he alleged violation of a labor contract is both necessary and sufficient to invoke federal subject-matter jurisdiction under section 301(a) . . . . Because a party need only *allege* the violation of a labor contract to invoke federal subject-matter jurisdiction . . . this requirement was easily satisfied here."); *cf. Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009) (holding that "the existence of a union contract is an element of Plaintiffs' merits claim, not a limit on federal subject-matter jurisdiction").

UE's petition filed in district court is in part a suit for violation of a collective bargaining agreement. UE sued to enforce the terms of the alleged collective bargaining agreement. UE's petition specifically alleged "[t]hat the State . . . has notified UE that it will neither accept nor abide by the terms of the collective bargaining agreement." UE's petition prayed for "an order directing the State to comply with the terms and conditions of the collective bargaining agreement . . . and to make the public employees . . . whole for any losses suffered by Defendant's refusal to accept and abide by the collective bargaining agreement . . . ." We need not decide whether federal jurisdictional requirements were satisfied for this Iowa action. The petition satisfied Iowa's notice pleading requirements.

In our view, the Iowa jurisdictional statute is broader than the LMRA. PERA was enacted after the LMRA, and our legislature could have used the federal template allowing "suits for violation" of collective bargaining agreements. Instead, section 20.17(5) has broader language allowing suits to enforce the terms—thereby allowing adjudication of the existence of a contract and a judicial declaration of the contract terms without requiring allegations of a specific violation. For these reasons, the State's reliance on federal authorities is unpersuasive.

**IV. Whether the District Court Erred by Not Dismissing or Staying This Case in Favor of the PERB Agency Proceedings.**

The State argues that the district court erred by failing to dismiss or stay this action in favor of the PERB agency proceedings. The State argues that PERB is better suited to decide contract-formation issues for public collective bargaining agreements and that challenges to the validity of an agency rule should be addressed first by the agency in administrative proceedings. The State relies on the doctrine of primary jurisdiction and

on the duty to exhaust administrative remedies. We address each argument in turn.

**A. Primary Jurisdiction.** The district court declined to dismiss or stay this action in favor of the PERB administrative proceedings under the doctrine of primary jurisdiction. Under the doctrine of primary jurisdiction,

> courts will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal or agency prior to the solution of that question by the administrative tribunal (1) where the question demands the exercise of administrative discretion requiring the special knowledge, experience and services of the administrative tribunal, (2) to determine technical and intricate matters of fact, and (3) where a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered.

*State ex rel. Miller v. DeCoster*, 608 N.W.2d 785, 791 (Iowa 2000) (quoting *Nw. Bell Tel. Co. v. Hawkeye State Tel. Co.*, 165 N.W.2d 771, 776 (Iowa 1969)). We agree with UE that the primary-jurisdiction doctrine did not require the dismissal or stay of this court action pending resolution of the agency proceedings. PERB's own rulings have recognized the court's authority to determine the enforceability of collective bargaining agreements.[6] Indeed, PERB stayed its own agency proceedings in this dispute pending resolution of this district court action.

---

[6]*See, e.g., State v. AFSCME/Iowa Council 61*, 91 PERB 4474, 1991 WL 11692486, at *6 (July 19, 1991) ("[A]n action for enforcement of the arbitrated contract provisions is pending in district court pursuant to [Iowa Code section 20.17(5)], and we believe that forum is appropriate for the determination of the issues raised here."); *Gen. Drivers, Local Union No. 218*, 75 PERB 433, at 3 (July 21, 1975), https://www.iowaperb.org/Document?db=IOWA-STATE-PERBS&query=(select+0+(byhits+(match+PERB_CASE_NUMBER+%6075-PERB-433))) [https://perma.cc/8373-MHBA] ("This Board believes that the action of the legislature of the State of Iowa, in failing to list contract violations as prohibited practices and in providing in Section 17(5) for enforcement of contracts in the district courts, was intended to follow the scheme of the national act, and leave enforcement of collective bargaining agreements, including orders compelling arbitration, to the exclusive jurisdiction of the courts, except in those cases where a violation of an agreement might also constitute a prohibited practice within the meaning of Section 10 of the Act.").

Ordinarily, a challenge to the validity of an agency rule should be heard first by the agency that promulgated the rule, with judicial review governed by Iowa Code chapter 17A. *Hollinrake v. Monroe County*, 433 N.W.2d 696, 699–700 (Iowa 1988) (holding chapter 17A provided the exclusive remedy for deputy's challenge to rule on vision requirements for law enforcement academy). But we have also held that "[a] party aggrieved by application of an administrative rule may challenge its validity in an independent action where the rule is sought to be applied." *Jew v. Univ. of Iowa*, 398 N.W.2d 861, 864 (Iowa 1987). The State's failure to preserve error on its challenge to contract formation based on Iowa Administrative Code rule 621—6.5(3) removes that rule as a basis for primary jurisdiction on this appeal, and we do not reach UE's challenge to the validity of that rule.

PERB's expertise in public collective bargaining did not require the district court to dismiss or stay this action. Iowa courts routinely adjudicate contract-formation and contract-enforcement issues. *See, e.g., City of Akron v. Akron Westfield Cmty. Sch. Dist.*, 659 N.W.2d 223, 226 (Iowa 2003) (per curiam) (holding contract with city is void without formal vote required by statute); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 421 (Iowa 1977) (determining on de novo review that negotiations ripened into enforceable oral contract); *Serv. Emps. Int'l, Local No. 55 v. Cedar Rapids Cmty. Sch. Dist.*, 222 N.W.2d 403, 409 (Iowa 1974) (declaratory judgment action holding no enforceable contract was formed between school district and union). Actions adjudicating contract formation are so common that the Iowa State Bar Association promulgated a uniform civil jury instruction on determining contract formation.[7]

---

[7]Iowa State Bar Ass'n, Iowa Civil Jury Instruction 2400.3 (2018) ("**Existence Of A Contract.** The existence of a contract requires a meeting of the minds on the material

We acknowledge PERB's expertise in the negotiation of collective bargaining agreements between public employers and unions. The leading federal case adjudicating formation of a collective bargaining agreement was decided on judicial review of a ruling of the National Labor Relations Board (NLRB). *Pepsi-Cola*, 659 F.2d at 88. But as we explain below, the NLRB has greater powers than PERB, with primary or exclusive jurisdiction over representational issues. *See generally San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773 (1959) (discussing when and why courts must yield to the primary jurisdiction of the NLRB). Yet federal courts have *concurrent* subject matter jurisdiction over an action for breach of contract, "[e]ven if a party's conduct might be an unfair labor practice[.]" *ABF Freight Sys., Inc.*, 645 F.3d at 964 ("[T]he *Garmon* preemption doctrine is simply 'not relevant' where there is a claim under section 301 asserting a breach of the collective bargaining agreement."). The district court correctly ruled that it had concurrent jurisdiction with PERB.

Iowa Code chapter 20 and PERB's regulations do not equip the agency to adjudicate contract-formation and contract-enforcement issues. "The doctrine of primary jurisdiction presupposes an ability of the administrative agency to adjudicate the issues of law or fact which are alleged to be appropriate for administrative resolution." *Rowen v. LeMars Mut. Ins.*, 230 N.W.2d 905, 912 (Iowa 1975). And the Iowa legislature has expressly authorized district courts to adjudicate actions to enforce public employee collective bargaining agreements without first requiring the parties to litigate the contract-formation or contract-enforcement issues in

---

terms. This means the parties must agree upon the same things in the same sense. You are to determine if a contract existed from the words and acts of the parties, together with all reasonable inferences you may draw from the surrounding circumstances.").

a PERB agency action. *See* Iowa Code § 20.17(5). For these reasons, we affirm the district court's rulings rejecting the primary-jurisdiction doctrine.

**B. Exhaustion of Administrative Remedies.** The State next argues that UE failed to exhaust its administrative remedies because PERB has not yet resolved the parties' prohibited-practice complaints. As noted, PERB has stayed these complaints pending resolution of this court action. We conclude that the district court correctly rejected the State's exhaustion argument because the PERB proceedings did not provide an adequate remedy for breach of a collective bargaining agreement.

We begin our analysis with the basic principles of the exhaustion requirement, which is codified in Iowa Code section 17A.19. "The exhaustion requirement . . . 'has several purposes, including honoring agency expertise, handling matters within an agency and not in the courts, and preserving precious judicial resources.' " *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) (quoting *IES Utils., Inc. v. Iowa Dep't of Revenue & Fin.*, 545 N.W.2d 536, 538 (Iowa 1996)). "[B]efore a person may obtain judicial review of administrative action, that action must first have been officially sanctioned and thereafter reviewed within the agency to the fullest extent provided by law." *N. River Ins. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 545 (Iowa 1993). The exhaustion requirement applies if two conditions are met: an administrative remedy for the wrong exists and exhausting this remedy is statutorily required. *Id.* "If the agency is incapable of granting the relief sought during the subsequent administrative proceedings, a fruitless pursuit of these remedies is not required." *Salsbury Labs. v. Iowa Dep't of Envtl. Quality*, 276 N.W.2d 830, 836 (Iowa 1979). We agree with UE that it could not obtain the relief sought through agency action.

PERB has jurisdiction to hear prohibited-practice complaints. Iowa Code § 20.11(1). In its prohibited-practice complaint, UE alleged that the State had engaged in prohibited practices described in Iowa Code section 20.10, which provides,

> 1. It shall be a prohibited practice for any public employer . . . to refuse to negotiate in good faith with respect to the scope of negotiations as defined in section 20.9.
>
> 2. It shall be a prohibited practice for a public employer or the employer's designated representative to:
>
> > *a.* Interfere with, restrain, or coerce public employees in the exercise of rights granted by this chapter.
> >
> > . . . .
> >
> > *e.* Refuse to negotiate collectively with representatives of certified employee organizations as required in this chapter.
> >
> > *f.* Deny the rights accompanying certification granted in this chapter.

*Id.* § 20.10(1), (2)(*a*), (2)(*e*), (2)(*f*).

There is no prohibited practice based on breach of a collective bargaining agreement, nor do any of the prohibited practices relate to contract enforcement. *See generally id.* § 20.10 (enumerating prohibited practices). By contrast, federal law empowers the NLRB to find an unfair labor practice when a party fails to sign a collective bargaining agreement that has actually been reached. 29 U.S.C. § 158(d) (2018) (requiring "the execution of a written contract incorporating any agreement reached if requested by either party").

PERB's powers are more limited than the NLRB's. If, upon investigation, PERB determines a party

> has committed a prohibited practice, the board may, within thirty days of its decision, enter into a consent order with the party to discontinue the practice, or after the thirty days following the decision may petition the district court for

injunctive relief pursuant to rules of civil procedure 1.1501 to 1.1511.

Iowa Code § 20.11(4). PERB lacks authority to enforce the collective bargaining agreement through an order for specific performance, award of damages for breach, or some other remedy. No statute or rule requires UE to pursue its prohibited-practice complaint with PERB before filing a district court action for enforcement of the collective bargaining agreement. *See id.* § 20.17(5).

PERB cannot order the relief UE seeks here. We affirm the district court's ruling that UE was not required to exhaust its administrative remedies with PERB before filing its petition in district court.

**V. Whether the District Court Correctly Granted Summary Judgment to Enforce the Collective Bargaining Agreement.**

We now turn to the fighting issue on the merits: whether an enforceable collective bargaining agreement was formed, as the district court ruled on summary judgment. The parties stipulated that "[a]t no time prior to ratification by UE on February 14, 2017 of the State's December 20, 2016 initial proposal did the State withdraw its December 20, 2016 initial proposal." The State failed to preserve error on its defense to contract formation based on Iowa Administrative Code rule 621—6.5(3) requiring the public employer to vote to ratify the agreement after the union vote. The State nevertheless argues no contract was formed.

We begin with the governing law. "[O]rdinary contract principles do not necessarily apply to [collective bargaining agreements.]" *Local Lodge No. 1426, Int'l Ass'n of Machinists & Aerospace Workers v. Wilson Trailer Co.*, 289 N.W.2d 608, 610 (Iowa 1980). Collective bargaining agreements differ from ordinary contracts:

> The "essence" of a collective bargaining agreement is an extremely broad concept. It requires a casting aside of traditional views of contract law in favor of a multitude of other considerations, including not only the written and unwritten agreements, themselves, but also the practices of the parties or the industry in general.

*Sergeant Bluff-Luton Educ. Ass'n*, 282 N.W.2d at 150. The United States Court of Appeals for the Eighth Circuit in *Pepsi-Cola* recognized the differences between traditional contract principles and collective bargaining law:

> In a private commercial setting, the parties voluntarily contract with each other. Traditional contract law therefore provides that an offer terminates if rejected by the offeree, thus allowing the offering party free to strike a bargain elsewhere, with no danger of being bound to more than one contract. In contrast, the National Labor Relations Act compels the employer and the duly certified union to deal with each other and to bargain in good faith. Upon rejection of an offer, the offeror may not seek another contracting party. As explained by the Supreme Court, "The choice is generally not between entering or refusing to enter into a relationship, for that in all probability preexists the negotiations."

659 F.2d at 89 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S. Ct. 1347, 1352 (1959)). Iowa law likewise compels the union and public employer to bargain in good faith. Iowa Code § 20.9 (imposing duty to negotiate in good faith); *id.* § 20.10(1) (prohibiting refusal to negotiate in good faith); *id.* § 20.19 (requiring parties to negotiate in good faith over impasse procedures).

The Eighth Circuit acknowledged that the "technical rules of contract do not control whether a collective bargaining agreement has been reached." *Pepsi-Cola*, 659 F.2d at 89. As a result, the Eighth Circuit declined to follow the common law rule that a rejection or counteroffer automatically terminates the offer. *Id.* at 89–90. Instead, the Eighth Circuit concluded that "an offer, once made, will remain on the table unless explicitly withdrawn by the offeror or unless circumstances arise

which would lead the parties to reasonably believe that the offer had been withdrawn." *Id.* at 90. The *Pepsi-Cola* standard is the prevailing standard in federal labor law. *See, e.g.*, *E.W. Grobbel Sons, Inc. v. NLRB*, 176 F.3d 875, 878–79 (6th Cir. 1999) (acknowledging *Pepsi-Cola* standard is the proper standard); *NLRB v. Auciello Iron Works, Inc.*, 980 F.2d 804, 808–09 (1st Cir. 1992) (adopting *Pepsi-Cola* standard); *NLRB v. Burkart Foam, Inc.*, 848 F.2d 825, 830 (7th Cir. 1988) (same); *Presto Casting Co. v. NLRB*, 708 F.2d 495, 497–99 (9th Cir.) (same); *Ga. Kraft Co., Woodkraft Div. v. NLRB*, 696 F.2d 931, 937–38 (11th Cir. 1983) (same), *vacated and remanded on other grounds*, 466 U.S. 901, 104 S. Ct. 1673 (1984); *Capitol-Husting Co. v. NLRB*, 671 F.2d 237, 244 (7th Cir. 1982) (same); 20 Richard A. Lord, *Williston on Contracts* § 55:16, at 66–67 (4th ed. 2016) (discussing contract principles with regard to collective bargaining).

We adopt the *Pepsi-Cola* standard as consistent with the statutory obligation of the public employer and union to continue negotiating in good faith until impasse. The State stipulated that its December 20 offer had not been withdrawn at the time UE accepted it. The State argues, however, the circumstances were such that a reasonable person would have believed the offer had been withdrawn because (1) UE rejected the State's December 20 offer by standing on its own initial position (until February 10) and (2) the State's offer was contingent on legislative action. We find neither argument persuasive.

The district court ruled that UE had not rejected the State's offer. The district court reasoned,

> To hold that a party's reluctance to deviate from an initial position until more information is obtained regarding the other's position constitutes a rejection of the other's position is squarely at odds with the policy that an offer can remain on the table to be considered at a later time.

*See Auciello Iron Works, Inc.*, 980 F.2d at 809 (holding that a bargaining representative " 'storming out' of . . . meeting without setting another meeting date or saying farewell" did not constitute a rejection of the offer); *Burkart Foam, Inc.*, 848 F.2d at 830 (holding that an employer's unwillingness to deviate from its position kept the offer on the table). We agree.

Similarly, the district court concluded that the State's "reluctance to deviate from its initial position until it could determine what legislative action was forthcoming in the area of collective bargaining does not translate to that position being 'contingent upon and subject to legislative action.' " We agree.

Other circumstances support the conclusion that a reasonable person would believe the State's December 20 offer remained on the table when accepted and ratified by UE in February. The State made no response when informed by letter dated February 10 that UE's negotiation committee unanimously voted to accept the State's December 20 offer. One would reasonably expect some pushback at that crucial moment, such as an assertion that there was no deal, before the union membership voted to ratify the agreement. The State's silence is at odds with its position that a reasonable person would have considered its December 20 offer withdrawn by February 10. By contrast, in another case in which the State contends its final offer had been withdrawn, the State's negotiator was told the union had just accepted the last offer and was putting the agreement to a vote. The State's negotiator did not remain silent, but rather gave the expected response to the union, stating "there was not an agreement to be ratified and that the parties need[ed] to continue to bargain." *Serv. Emps. Int'l Union, Local 199 v. State*, ___ N.W.2d ___, ___ (Iowa 2019).

The district court, relying on undisputed facts, correctly determined that no reasonable person would have believed on February 10–14 that the State's offer had been withdrawn. The State is bound by its stipulation that its offer had not been withdrawn before UE's members voted to ratify its terms on February 14. We affirm the district court's ruling that an enforceable collective bargaining agreement was formed upon the union's ratification vote.

## VI.  Disposition.

For these reasons, we affirm the district court's summary judgment in favor of UE enforcing the collective bargaining agreement.

**AFFIRMED.**