WATERMAN, Justice.
In this appeal, we must determine whether the Iowa Board of Regents and a public employee union entered into an enforceable collective bargaining agreement. The fighting issue is the validity of an agency rule that requires the Board to meet to vote to accept a tentative voluntary agreement ratified by the union before the contract becomes effective. The parties' negotiations are governed by the Public Employment Relations Act (PERA), Iowa Code chapter 20, and rules promulgated by the Public Employment Relations Board (PERB). Iowa Code section 20.17(4) (2017) provides that "[t]he collective bargaining agreement shall become effective only if ratified by a majority *71 of [union members] voting by secret ballot." This statute makes no mention of requiring the public employer to vote to ratify the agreement, but a related statute generally requires final action to be conducted in an open meeting. Iowa Code § 21.5(3). In 1976, PERB enacted Iowa Administrative Code rule 621-6.5 to implement the voting requirements for both the employer and union.[1] The union and Board had each voted to ratify their voluntary collective bargaining agreements consistent with that rule in 2009, 2011, and 2015. However, in 2017, the Board did not vote to approve the proposed agreement ratified by the union.
The union filed this action under Iowa Code section 20.17(5) to enforce the collective bargaining agreement. The Board moved for summary judgment, relying on rule 621-6.5(3). The union argued the agency rule was invalid because it imposed a ratification requirement not included in section 20.17(4). The district court, reading chapter 20 and 21 together, upheld the validity of the agency rule and granted summary judgment dismissing the union's enforcement action. The union appealed, and we retained the appeal.
On our review, for the reasons explained below, we hold PERB acted within its statutory authority in promulgating rule 621-6.5(3), which has the force of law. The legislature expressly granted PERB rulemaking and interpretive authority. Chapters 20 and 21 are interrelated and must be construed together. Rule 621-6.5 implements ratification voting requirements for both the Board and the union. The district court correctly applied rule 621-6.5(3) to hold the parties had no enforceable collective bargaining agreement without the Board's vote to ratify it. Accordingly, we affirm the summary judgment dismissing this action.
I. Background Facts and Proceedings.
Service Employees International Union, Local 199 (SEIU) represents approximately 3500 employees of the State of Iowa who work at the University of Iowa Hospitals and Clinics (UIHC). The UIHC is governed by the Iowa Board of Regents. Iowa Code § 262.7(1). The Board consists of nine members appointed by the Governor. Id. §§ 262.1-.2. The Board meets periodically to "adopt[ ] rules and policies having general application to the institutions subject to its governance," including the UIHC. Iowa Admin. Code r. 681-11.1(5) ; see also Iowa Code § 262.9(3). The Board, when acting as a public employer, has discretion to retain attorneys to "carry[ ] out collective bargaining and related responsibilities provided for under chapter 20." Iowa Code § 262.9(16). The Board is subject to the open-meetings requirements of Iowa Code chapter 21. Id. §§ 21.2(1)(a ), .3.
SEIU and the Board negotiated voluntary two-year collective bargaining agreements in 2009, 2011, and 2015.[2] In each of those years, the Board formally voted to approve the collective bargaining agreement after the ratification vote by SEIU's membership. The agreement negotiated in 2015 expired by its terms on June 30, 2017.
In the fall of 2016, the Board and SEIU began negotiating a new agreement to begin *72 on July 1, 2017. SEIU selected James "Jim" Jacobson as its lead negotiator, and the Board chose Michael Galloway as its lead negotiator. Jacobson and Galloway met on October 10, 2016, to discuss a timeline for the upcoming exchange of offers and ensuing negotiations. The Board met on October 20 and went into a closed session to discuss collective bargaining strategy with counsel and institutional representatives. The Board did not vote to approve any bargaining agreement during this closed session.
On November 29, Jacobson and Galloway exchanged initial bargaining proposals. They met again on December 8 and 14 to discuss the initial proposals and exchange additional proposals. At the December 14 meeting, Jacobson presented SEIU's counteroffer. Galloway made clear to Jacobson that any terms they set at the bargaining table would have to be approved by the Board and that Galloway would have to "sell it" to the Board. Galloway canceled bargaining sessions scheduled for January 5 and 12, 2017.
On January 9, Galloway copied Jacobson on an email to the PERB reporting the status of the parties' negotiations. Galloway's email explained that the Board would soon be extending its final offer:
We will be giving the union a final offer in writing this week. Jim is correct that we cancelled the 5th so that I could visit with the Board and the hospital regarding my financial authority. I am having surgery on the 11th so I can't make the 12th.
Our final offer will contain all the financial authority I will have. If it is not acceptable, then we should just schedule mediation. Thanks[.]
On January 10, Galloway emailed Jacobson and attached the Regents' final offer accompanied by this explanation:
Please find attached the Board of Regents' final offer to SEIU. The offer includes all the items we had agreed previously upon during negotiations. I believe this offer represents a substantial increase to the inpatient nurses and is a fair offer to the other members of the bargaining unit. This offer contains all the financial authority we have from the Board of Regents. Please let us know if this offer is acceptable.
If the offer is not acceptable, we will need to schedule mediation during the week of January 30th.
The cover page of the January 10 offer stated, "This is a package proposal and must be accepted or rejected in its entirety." Yet the cover page also noted, "The [Board] reserves the right to add to, delete from, and/or revise this proposal."
On January 17, Jacobson called Galloway to ask whether better terms were available on the Weekend Option Program for nurses and a probationary period for new employees. The next day, Jacobson followed up by email to ask if Galloway had spoken to the Board about those matters. Galloway responded that he did "not have a response." However, Galloway foreshadowed headwinds for the Board's ultimate approval of the pending proposal:
I know UIHC would be much more comfortable leaving the probationary status current contract and maintaining our position on weekend option. That being said, the biggest issue now is that the Regents have heard rumors regarding the position AFSCME has taken with the State. It is my understanding that the Union's offer was dramatically lower than 2% and increased the insurance contributions.
I understand these are different units, but there will be grave concerns regarding our offer once it is received/understood by the Governor's office. I knew *73 this could become an issue and was hoping to avoid it by getting this contract completed quickly.
On January 25, Jacobson emailed Galloway to inform him SEIU had accepted the Regents' final offer, stating,
I left you a voicemail earlier today. But I thought I better put it in writing. SEIU has agreed to the terms of the [Board]'s final offer sent via email on January 10, 2017.
SEIU will hold a ratification vote as quickly as possible and let you know the results.
Please contact me regarding drafting a final, clean version of the document.
On January 31, Galloway spoke with Jacobson on the phone and "informed him that there was not an agreement to be ratified and that the parties need[ed] to continue to bargain." Galloway did not expressly withdraw the Board's January 10 offer. On February 1, Jacobson sent Galloway an email clarifying SEIU's position,
In light of our conversation yesterday, I wanted to recap the situation in which SEIU, as the legal representatives of approximately 3,500 health care professionals, and the Board of Regents find themselves.
On January 10, 2017 you sent SEIU, as the chief negotiator for the Board of Regents, a final contract offer.
On January 25, 2017, SEIU accepted the offer with both a voice message and an email message.
On January 31, during a telephone conversation, you and Tim Cook informed me that the Board of Regents believed the parties had not, in fact, reached an agreement.
As I said yesterday, SEIU plans to hold its ratification vote in the very near future. I will inform you of the results.
Please let me know if the Board of Regents' position changes.
On February 8, Jacobson emailed Galloway to inform him of SEIU's ratification vote,
SEIU, Local 199 ratified the tentative agreement the parties reached on January 25, 2017. The vote was held February 7, 2017 with 98.6 percent of the voters in favor of accepting the agreement. Please let me know if you have any questions.
On February 9, House File 291 was introduced in the Iowa House of Representatives. H.F. 291, 87th G.A., 1st Sess. (Iowa 2017). House File 291 made significant amendments to PERA by substantially limiting the number of mandatory bargaining topics for most public employees, including the employees in SEIU's bargaining units. The Governor signed House File 291 into law on February 17, and the amendments took effect immediately.[3] 2017 Iowa Acts ch. 2 (codified in part at Iowa Code ch. 20 (2018)).
Although the Board had publicly voted to approve the collective bargaining agreements after SEIU's ratification votes in 2009, 2011, and 2015, the Board held no such vote to approve the 2017 agreement. The Board met on March 8 to discuss and vote to accept a collective bargaining agreement with the faculty union of the University of Northern Iowa. The Board did not consider or approve the SEIU agreement at this meeting.
On March 10, SEIU filed this action in district court pursuant to Iowa Code section 20.17(5) to enforce the collective bargaining *74 agreement. SEIU alleged that the terms in the Board's January 10 offer became a valid collective bargaining agreement upon SEIU's ratification vote. The Board filed a preanswer motion to dismiss, contending that no valid collective bargaining agreement existed to enforce under section 20.17(5). The Board relied on the rule promulgated by PERB that requires a public employer to accept or reject a tentative agreement before the agreement becomes effective. Iowa Admin. Code r. 621-6.5(3). The Board argued the court lacked subject matter jurisdiction without a contract to enforce. SEIU resisted the motion to dismiss, arguing rule 621-6.5(3) is invalid and that the agreement became effective when ratified by vote of the union's members under Iowa Code section 20.17(4). The district court denied the Board's motion to dismiss, concluding the court had subject matter jurisdiction to determine whether the parties entered into an enforceable agreement.
The Board and SEIU filed cross-motions for summary judgment. The Board relied on rule 621-6.5(3). SEIU argued the Board's offer was never withdrawn and that rule 621-6.5(3) is invalid because it added a requirement of a vote by the public employer that is not imposed by the controlling statute, Iowa Code section 20.17(4). The district court rejected SEIU's challenge to the validity of rule 621-6.5(3). The district court noted the Board is subject to the open-meetings and public-voting requirements of Iowa Code chapter 21 and that section 20.17(4) contains no language divesting the Board "of the ability to meet and approve a contract that is negotiated by its representative and the union. PERB's rule merely spells out when and how that will occur." The court concluded PERB had the statutory authority to promulgate rule 621-6.5(3). The district court applied that rule to grant summary judgment in favor of the Board stating, "Because the Board of Regents did not approve the tentative contract, there is no executed contract." The district court denied SEIU's motion for enlarged findings and dismissed SEIU's petition. SEIU appealed the district court ruling, and we retained the appeal.
II. Scope of Review.
We review a summary judgment ruling for correction of errors at law. Peak v. Adams , 799 N.W.2d 535, 542 (Iowa 2011). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Emp'rs Mut. Cas. Co. v. Van Haaften , 815 N.W.2d 17, 22 (Iowa 2012). "We view the evidence in the light most favorable to the nonmoving party." Luana Sav. Bank v. Pro-Build Holdings, Inc. , 856 N.W.2d 892, 895 (Iowa 2014). "The court must consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record." Thornton v. Am. Interstate Ins. , 897 N.W.2d 445, 460 (Iowa 2017) (quoting McIlravy v. N. River Ins. , 653 N.W.2d 323, 328 (Iowa 2002) ).
III. Analysis.
We must decide whether the district court erred by granting the Board's motion for summary judgment dismissing SEIU's petition to enforce the 2017 collective bargaining agreement. The fighting issue is the validity of Iowa Administrative Code rule 621-6.5(3). We conclude the district court correctly ruled PERB had the statutory authority to promulgate rule 621-6.5(3) and properly granted summary judgment dismissing SEIU's action to enforce a contract the Board never voted to approve.
The legislature empowered PERB to adopt rules as the agency deems *75 necessary to carry out the purposes of chapter 20. Iowa Code § 20.6(5). The validity of an agency rule is a question of law. City of Des Moines v. Iowa Dep't of Transp. , 911 N.W.2d 431, 440-41 (Iowa 2018). "Ordinarily, state agency rules are given 'the force and effect of law.' " Id. at 440 (quoting Stone Container Corp. v. Castle , 657 N.W.2d 485, 489 (Iowa 2003) ). The "rule is 'presumed valid unless the party challenging the rule proves a "rational agency" could not conclude the rule was within its delegated authority.' " Id. at 439 (quoting Meredith Outdoor Advert., Inc. v. Iowa Dep't of Transp. , 648 N.W.2d 109, 117 (Iowa 2002) ). "[T]he power of the agency is limited to the power granted by statute." Id. (quoting Brakke v. Iowa Dep't of Nat. Res. , 897 N.W.2d 522, 533 (Iowa 2017) ). "Thus, if the rules adopted by the agency 'exceed the agency's statutory authority, the rules are void and invalid.' " Id. at 441 (quoting Wallace v. Iowa State Bd. of Educ. , 770 N.W.2d 344, 348 (Iowa 2009) ).
"We do not defer to the agency's interpretation of its own statutory authority to issue a rule unless 'the legislature has clearly vested that interpretation in the agency.' " Id. at 439 (quoting Brakke , 897 N.W.2d at 533 ). We recently invalidated the department of transportation's rules regulating placement of automated traffic enforcement equipment on interstate highways because that agency lacked the statutory authority to promulgate such rules. Id. at 450. We noted the legislature had not given that agency interpretive authority. Id. at 439.
By contrast, the legislature in 2010 "amend[ed] Iowa Code section 20.6 to expressly grant PERB authority to '[i]nterpret, apply, and administer' the provisions of Iowa Code chapter 20." AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd. , 846 N.W.2d 873, 878 (Iowa 2014) (quoting 2010 Iowa Acts ch. 1165, § 6 (codified at Iowa Code § 20.6(1) (2011))). Accordingly, we give deference to PERB's interpretation of chapter 20 as to its statutory authority to promulgate rule 621-6.5 and will uphold PERB's interpretation unless it is "irrational, illogical, or wholly unjustifiable." Id. (quoting Iowa Code § 17A.19(10)(l ) (2013)).
Although PERB is not a party to this case, SEIU may challenge the validity of rule 621-6.5(3) in this action. Jew v. Univ. of Iowa , 398 N.W.2d 861, 864 (Iowa 1987) ("A party aggrieved by application of an administrative rule may challenge its validity in an independent action where the rule is sought to be applied.").
Rule 621-6.5(3) provides,
6.5(3)Acceptance or rejection by public employer. The public employer shall, within ten days of the tentative agreement, likewise meet to accept or reject the agreement, and shall within 24 hours of the acceptance or rejection serve notice on the employee organization of its acceptance or rejection of the proposed agreement; however, the public employer shall not be required to either accept or reject the tentative agreement if it has been rejected by the employee organization.
Iowa Admin. Code r. 621-6.5(3). The ten-day deadline does not apply to the Iowa Board of Regents. Id. r. 621-6.5(4)(b ).
PERB amended and reenacted Iowa Administrative Code chapter 6 in 2016, including rule 621-6.4(3) (now renumbered to rule 621-6.5(3) ).[4] At that time, PERB had *76 express interpretive authority from the 2010 amendments to Iowa Code section 20.6. See Iowa Code § 20.6(1) (2016) (noting that PERB shall "[i]nterpret, apply, and administer" Iowa Code chapter 20).
SEIU's challenge to rule 621-6.5(3) is straightforward. SEIU argues this rule is invalid because it adds a requirement for ratification by Board vote that is not found in the controlling statute, which provides,
The terms of a proposed collective bargaining agreement shall be made available to the public by the public employer and reasonable notice shall be given to the public employees by the employee organization prior to a ratification election. The collective bargaining agreement shall become effective only if ratified by a majority of those voting by secret ballot.
Iowa Code § 20.17(4) (2017).
PERB necessarily construed section 20.17(4) to permit rule 621-6.5(3), the rule promulgated by the agency to implement that Code section. Under our standard of review, we will not reverse PERB's interpretation unless it is "irrational, illogical, or wholly unjustifiable." AFSCME Iowa Council 61 , 846 N.W.2d at 878 (quoting Iowa Code § 17A.19(10)(l ) ). Under this deferential standard of review, we decline to reverse PERB's statutory interpretation. We reject SEIU's conflicting interpretation.
Section 20.17(4) expressly requires the union to ratify the proposed collective bargaining agreement without requiring a ratification vote by the public employer. SEIU's challenge is facially compelling if the statute is read in isolation. But SEIU's myopic focus on that provision alone must yield to our requirement to read related statutes together and harmonize them if possible. See Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."); Kolzow v. State , 813 N.W.2d 731, 736 (Iowa 2012) ("If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them.") (quoting State v. Carpenter , 616 N.W.2d 540, 542 (Iowa 2000) ). Our broader analysis shows the rule does not create a new public employer voting requirement omitted from the Iowa Code. To the contrary, rule 621-6.5(3) merely implements statutory voting requirements found in related Code sections for unions and public employers alike.
Both chapter 20 and chapter 21 govern public employers. As the district court correctly concluded, the Board is subject to the open-meetings and public-voting requirements of Iowa Code chapter 21. Iowa Code §§ 21.2(1)(a ), .3; id. § 262.8. "Final action [by the Board] on any matter shall be taken in an open session unless some other provision of the Code expressly permits such actions to be taken in closed session." Id. § 21.5(3). Final action includes approval of employment contracts with public employees. See Hutchison v. Shull , 878 N.W.2d 221, 237 (Iowa 2016)
*77 (holding county board's deliberations on employee reorganization plan were subject to chapter 21 open-meetings requirements). The statutes are linked by the cross-reference in section 20.17(3), which provides that certain negotiation and strategy discussions may be conducted in closed session while chapter 21's open-meetings requirements apply to other aspects of collective bargaining.[5]
Contracts with public entities are unenforceable when executed without proper approval or compliance with statutory requirements. City of Akron v. Akron Westfield Cmty. Sch. Dist. , 659 N.W.2d 223, 225-27 (Iowa 2003) (per curiam) (holding contract with city is void without formal vote required by statute); City of McGregor v. Janett , 546 N.W.2d 616, 620 (Iowa 1996) ("This court has long held that acts by individual members of a public body ... [are not binding] unless officially sanctioned in accordance with the statute."); see also Hutchison , 878 N.W.2d at 237-38 (noting " Iowa Code section 21.6(3)(c ) allows the district court to void any action taken by the board" and directing district court on remand to consider whether subsequent board approval vote "cured any violation of the open meetings law").
"The open meetings law is intended to safeguard free and open democracy by ensuring the government does not unnecessarily conduct its business in secret." Hutchison , 878 N.W.2d at 237. Requiring public, open votes to approve government contracts serves that goal. Formal contract approval requirements also protect taxpayers. City of Akron , 659 N.W.2d at 225. "[I]t would be a bad idea to frustrate those requirements." Id. at 225-26. Those who negotiate or enter into contracts with government entities are charged with knowledge of the requirements of a public vote. See id. at 225.
Against this backdrop, we conclude the district court correctly determined that PERB acted within its statutory authority by promulgating rule 621-6.5 to implement public-voting requirements for the Board, as codified in chapter 21, as well as the union membership secret-voting requirements, as codified in section 20.17(4).[6] The district court reasoned,
*78 [P]ublic boards and commissions are required to provide notice to the public and meet before voting on any action within the scope of its duties. See generally Iowa Code ch. 21. Section 20.17 does not contain any language to suggest that a public body divests itself of the ability to meet and approve a contract that is negotiated by its representative and the union. PERB's rule merely spells out when and how that will occur.
We agree with the district court's analysis. We reject SEIU's argument that rule 621-6.5(3) adds a statutory requirement contrary to section 20.17(4). Section 20.17(4) expressly requires a union vote because no other statute does so. Section 20.17(4) is silent regarding a ratification vote by the public employer because that requirement is codified in chapter 21. Cf. Gannon v. Bd. of Regents , 692 N.W.2d 31, 39-44 (Iowa 2005) (holding that a private corporation exercising authority delegated by the Board of Regents was performing a government function and was therefore subject to the open-records requirements of Iowa Code chapter 22). Nothing in section 20.17(4) eliminates the Board's duty to comply with chapter 21 when entering into employment contracts.
The parties' course of conduct with earlier collective bargaining agreements reflects the requirements of chapter 21 and rule 621-6.5(3). The Board voted to ratify the collective bargaining agreements negotiated with SEIU in 2009, 2011, and 2015. Galloway told Jacobson in December 2016 that he would have to "sell" any proposed new contract to the Board. The Board never voted to approve the proposed agreement ratified by the members of SEIU, and Galloway reiterated that there was no enforceable agreement in his discussions with Jacobson on January 31, 2017. Meanwhile, on March 8, as required under chapter 21 and rule 621-6.5(3), the Board voted to approve a separate collective bargaining agreement with the faculty union at the University of Northern Iowa. Galloway provided this uncontroverted testimony:
Throughout my practice, I have served as the chief negotiator in collective bargaining for a variety of public employers on more than 400 occasions. In this capacity, I am not aware of a single voluntary collective bargaining agreement reached involving a public employer with a governing body that was not conditioned upon a ratification vote by that governing body.
PERB promulgated rule 621-6.5(3) in 1976. The rule has withstood the test of time. The legislature in the subsequent four decades has taken no action to invalidate this rule. "We consider the legislature's inaction as a tacit approval of the [agency's] action." Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue , 921 N.W.2d 38, 48 (Iowa 2018) (alteration in original) (quoting City of Sioux City v. Iowa Dep't of Revenue & Fin. , 666 N.W.2d 587, 592 (Iowa 2003) ).[7]
We hold rule 621-6.5(3) is valid and entitled to the force of law. SEIU has failed to show PERB exceeded its statutory authority by promulgating this rule.
*79 The district court correctly applied that rule in granting the Board's motion for summary judgment. No enforceable agreement was reached without the requisite vote by the Board to approve the proposed collective bargaining agreement.[8]
IV. Disposition.
For those reasons, we affirm the district court's summary judgment dismissing SEIU's action to enforce the collective bargaining agreement.
AFFIRMED.
Mansfield, Christensen, and McDonald, JJ., join this opinion. Cady, C.J., files a dissenting opinion in which Wiggins, J., joins. Appel, J., files a separate dissenting opinion in which Wiggins, J., joins.

This rule was renumbered in August 2017 prior to the district court's summary judgment and was formerly Iowa Administrative Code rule 621-6.4. We will refer to the rule by its current number throughout this opinion.

During the negotiations for the 2013 contract, the parties reached an impasse that was resolved through binding arbitration. See Iowa Code § 20.22.

The amendments invalidated collective bargaining agreements still under negotiation. See H.F. 291, 87th G.A., 1st Sess. § 25 (Iowa 2017) (providing that collective bargaining agreements not completed by that date "shall not become effective").

The amendments to Iowa Administrative Code rule 621-6.4(3) were as follows, with additions underlined and removals crossed out:
6.4(3) Acceptance or rejection by public employer. The public employer shall, within ten days of the tentative agreement, likewise meet to accept or reject the agreement, and shall within 24 hours of the acceptance or rejection serve notice on the employee organization of its acceptance or rejection of the proposed agreement; provided, however, that the public employer shall not be required to either accept or reject the tentative agreement if it has been rejected by the employee organization.
38 Iowa Admin. Bull. 1046, 1048 (Dec. 9, 2015) (effective Jan. 13, 2016).

Section 20.17(3) provides,
Negotiating sessions, strategy meetings of public employers, mediation, and the deliberative process of arbitrators shall be exempt from the provisions of chapter 21. However, the employee organization shall present its initial bargaining position to the public employer at the first bargaining session. The public employer shall present its initial bargaining position to the employee organization at the second bargaining session, which shall be held no later than two weeks following the first bargaining session. Both sessions shall be open to the public and subject to the provisions of chapter 21. Parties who by agreement are utilizing a cooperative alternative bargaining process may exchange their respective initial interest statements in lieu of initial bargaining positions at these open sessions. Hearings conducted by arbitrators shall be open to the public.
Iowa Code § 20.17(3).

The rule implements the union voting requirement as follows:
6.5(2)Ratification or rejection by employee organization. Within seven days of the date of the tentative agreement, the employee organization shall conduct a ratification election on the tentative agreement. The employee organization shall give reasonable notice of the date, time and place of the election to the public employees; however, such notice shall be at least 24 hours prior to the election. The vote shall be by secret ballot, and the majority of votes cast will determine acceptance or rejection of the tentative agreement. Only members of the employee organization shall be entitled to vote; however, the employee organization may, pursuant to its internal procedures, extend voting rights to nonmember bargaining unit employees. The employee organization shall, within 24 hours of the conclusion of the election, serve notice on the public employer as to whether or not the proposed agreement has been ratified.

The Iowa Court of Appeals acknowledged the validity of rule 621-6.5(3) (previously 621-6.4(3)) in dicta nearly three decades ago. Moravia Cmty. Sch. Dist. v. Moravia Educ. Ass'n , 460 N.W.2d 172, 178 (Iowa Ct. App. 1990) (noting under rule 621-6.4 the union and the public employer each "has the right to accept or reject the tentative agreement").

The district court also correctly rejected SEIU's alternative argument that the agreement was approved by operation of law when the Board failed to vote to affirmatively reject the agreement within ten days of the union's ratification vote. As noted, the ten-day deadline does not apply to the Board as an arm of the State. Iowa Admin. Code r. 621-6.5(4)(b ).