# IN THE COURT OF APPEALS OF IOWA

No. 19-1010
Filed November 4, 2020


**AL BRUEGGEMAN, DAN BREUKER, TOM BREMER, ROGER BOSMA, MARK DILLEHAY, RANDY ROWE, ALLEN ROWE, and JARROD WALLACE,**
    Plaintiffs-Appellants,

**vs.**

**OSCEOLA COUNTY, IOWA and CITY OF HARRIS, IOWA,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Osceola County, David A. Lester, Judge.


Taxpayers appeal the district court's ruling denying their petition for writ of certiorari that challenged the joint adoption of an urban renewal area by the city council and the county board of supervisors. **REVERSED AND REMANDED.**

Aaron W. Ahrendsen and John C. Werden of Eich Werden Steger & Ahrendsen PC, Carroll, for appellants.

Stephen G. Kersten, Fort Dodge, for appellees.

Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

This case returns to our court for a second time.[1]  This go-round, Al Brueggeman and seven other taxpaying residents of Osceola County (collectively "the taxpayers") contend a resolution adopted by the City of Harris and Osceola County violates Iowa's urban renewal law.  *See* Iowa Code ch. 403 (2015).  That resolution anticipated using tax increment financing (TIF)[2] to raise revenue from properties with windmills in the county to cover the costs of the city's sewer rehabilitation project.  In challenging the resolution, the taxpayers argued the city and county ran afoul of the urban renewal law in three ways: (1) by not entering into a valid joint agreement before passing the resolution, in violation of Iowa Code section 403.17(4); (2) by establishing urban renewal areas that were not contiguous, in violation of section 403.17(23); and (3) by including wind energy conversion properties in the TIF, in violation of the "spirit and purpose" of the urban renewal law.  The district court rejected the taxpayers' claims.

---

[1] In the first appeal, we addressed two preliminary issues: 1) whether the taxpayers had standing to contest the resolution establishing the urban renewal area; and 2) whether the taxpayers were untimely in challenging the ordinance authorizing tax increment financing in the urban renewal area. *Brueggeman v. Osceola Cnty.*, No. 16-1552, 2017 WL 2464072, at *1 (Iowa Ct. App. June 7, 2017).  Although we agreed with the district court that the taxpayers were untimely in challenging the TIF ordinance, we allowed the case to proceed based on the resolution.  *Id.* at *5–7.  On timeliness, we stated: "Because the final action in the adoption of the ordinance took place on November 10, the plaintiff's November 3 petition challenging the ordinance was untimely."  *Id.* at *5 (citing Iowa R. Civ. P. 1.1402(3)).  On standing, we reversed the district court's ruling, finding the taxpayers could challenge the resolution because it was "sufficiently likely" they would suffer harm from the creation of the urban renewal area due to the anticipated use of TIF.  *Id.* at *7.
[2] *See* Iowa Code § 403.19 (authorizing use of TIF "for the benefit of the state, city, [or] county"); *see also Brueggeman*, 2017 WL 2464072, at *1 n.1 (quoting *Concerned Citizens of Se. Polk Sch. Dist. v. City of Pleasant Hill*, 878 N.W.2d 252, 254 (Iowa 2016) (providing a detailed explanation of the TIF process)).

On appeal from that rejection, the taxpayers reprise all three challenges to the urban renewal area.  But their focus is on the first claim.  They argue the city council could not retroactively ratify an alleged joint agreement with the county, as required by section 403.17(4) to form the urban renewal area.  Why not?  Because the council did not pass a resolution, as required by Iowa Code section 364.3(1), authorizing the mayor to enter into that agreement.  The taxpayers argue that under *City of Akron v. Akron-Westfield Community School District*, any oral agreement between the mayor and the county was void (not just voidable) and thus not subject to later ratification.  *See* 659 N.W.2d 223, 225 (Iowa 2003).

We agree *City of Akron* controls.  That case held that "any contract with a city entered without a formal motion, resolution, amendment or ordinance is void." *Id.*  In justifying what seemed like an "unduly harsh" result, the *Akron* court reasoned: "The legislature considered it of first importance for city officials to observe formal requirements before obligating taxpayers to finance the affairs of city government." *Id.* at 225–26.  Because Harris did not take formal action to enter the joint agreement with the county, any later effort at ratification fails.  Without a valid joint agreement, the city and county did not satisfy the requirements of section 403.17(4) for establishing the urban renewal area.  Given the importance of protecting taxpayers from municipal actions executed without observing statutory requirements, we reverse the ruling and remand to the district court.  Finding the first issue dispositive, we need not address the two other claims on appeal.

## I.  Facts and Prior Proceedings

Harris is a small city in Osceola County.  In fact, at last count, the city had fewer than two hundred residents.  To serve those residents, Harris began

operating its own wastewater treatment facility in 2004 under a pollution discharge permit issued by the Iowa Department of Natural Resources (DNR). For many years, Harris drained its wastewater into a single "stabilization lagoon." That lagoon drew DNR scrutiny from 2008 until 2014 because wastewater often overflowed into the nearby Ocheyedan River. Finding "the lagoon was not providing adequate storage time before wastewater was being released to the receiving stream," the DNR issued an administrative consent order against the city for violating its permit and DNR regulations. Under the consent order, Harris had to "submit a facility plan for the rehabilitation of the collection system" by August 2015 and begin reconstruction by July 2016. All repairs and improvements needed to be completed by August 2017 to avoid civil and possibly criminal penalties.

In February 2015, the city council and mayor Greg Spaethe met to discuss the DNR order. Although the city council unanimously agreed to move forward with the rehabilitation project, the city lacked a sufficient tax base to pay for the improvements. With estimated costs "ranging from $1.2 million up to $2 million," city attorney Daniel DeKoter recommended using TIF, explaining it "was the only available source" of financing that would allow the city to bring the facility up to code.[3] Because TIF required creating an urban renewal area that would include certain windmill properties located beyond the city's boundaries, DeKoter informed the city council that Harris could not proceed with the project without Osceola County's consent.

---

[3] DeKoter testified "the borrowing capacity, under [the city's] general bonding, would be maybe $400,000 to $500,000 maximum." But with TIF, the city would have the capacity to borrow from general tax revenue funds available to Osceola County to finance the project.

Based on DeKoter's recommendation, the city council unanimously passed resolution number 02.10.15.02 that stated:

> Section 1. That it is hereby determined that it is necessary and advisable to hire a bond counsel for Tax Increment Financing for the Lagoon & other projects.
> Section 2. By hiring a bond counsel the City of Harris will be able to obtain the funding necessary for the number of improvements that the City needs.
> BE IT FURTHER RESOLVED, the City Council hereby delegates the Mayor and City Clerk *the duty of hiring a bond counsel for Tax Increment Financing* for the Lagoon and other projects.

(Emphasis added.) Although the resolution delegated "the duty of hiring a bond counsel," the city council provided little clarity as to the scope of that duty in the meeting minutes.[4] When asked to provide context, DeKoter explained that "as long as they were meeting, they should adopt a resolution to hire bond counsel" so the city could move forward with the TIF and not "keep that process suspended."[5]

DeKoter believed the resolution to hire a bond counsel included authorization for the mayor to make "agreements with the County to move forward with TIF." Mayor Spaethe and city clerk Chrissi Wiersma shared a similar understanding. They testified that the bond-counsel resolution, in their view, included implied authorization for them to enter into the actual joint agreement with Osceola County, as needed for the TIF plan.

---

[4] The scope of the delegation is at issue on appeal because the taxpayers challenge the conduct of the mayor purporting to act on behalf of the city. Under Iowa Code section 364.2, the "power of a city is vested in the city council except as otherwise provided by a state law."

[5] DeKoter testified that either the city or the county could issue the bonds, "[b]ut if it would happen that the City would turn out to be the preferred initiator of the bonds, then they would need to be able to hire bond counsel."

Shortly after the city council meeting, Wiersma sent a letter to the county, asking generally for its assistance with financing the city's project. The letter stated, in part:

> The City of Harris is asking for help with possibly doing a TIF on the windmills for infrastructure within the City as well as possibly repairing and paving road in and around Harris.
> A representative from Harris would be more than willing to come before the Board of Supervisors to discuss the possibility of entering into an agreement with the County.

According to Wiersma, "[t]he purpose of the letter was to get a conversation going" between the city and county about how to proceed with the project.

In late March 2015, Wiersma and Mayor Spaethe attended a board meeting on behalf of the city to discuss the letter. During his deposition, Mayor Spaethe explained his primary goal was to secure agreement from the board of supervisors[6] to undertake the bond obligation because of the city's limited debt capacity.

Recalling that meeting later in his deposition, board chairperson Merlin Sandersfeld remembered asking Mayor Spaethe whether he had "full consent" from the city council to make that request. Sandersfeld also sought a copy of the city council's February resolution, but he did not see the resolution at that time. Relying on the mayor's assurance, the supervisors voted in favor of helping the city finance its urban renewal project and beginning the bond process for the TIF. The minutes of that meeting show the board's approval of hiring bond counsel for the project. Although the minutes do not refer to any formal agreement between

---

[6] The board is the governing body for Osceola County under Iowa Code section 311.301(2), which states: "A power of a county is vested in the board, and a duty of a county shall be performed by or under the direction of the board except as otherwise provided by law."

the mayor and the board, Mayor Spaethe and two supervisors testified that they entered into an oral agreement that same day to formalize the board's consent.

At a meeting later that August, the board unanimously voted to approve the engagement of Dorsey & Whitney Law Firm and the hiring of a financial consultant for the urban renewal project. The board met again in September, passing the county's first formal resolution. Under that resolution, the board published a notice of public hearing set for October 20, 2015, inviting Osceola County residents to voice their opinions about the urban renewal project and the TIF plan. The resolution also directed the county auditor to present a formal joint agreement to the city before the public hearing date. Before the board's September resolution, the record reveals no mention of a formal joint agreement.

The taxpayers (who now appeal) attended the October 20 hearing and voiced their objections to the proposed urban renewal plan. Noting their objections, the board nevertheless passed resolution number 10-15/16, establishing the urban renewal area. That resolution stated:

> Section 1. An economic development and blight area as defined in Chapter 403 of the Code of Iowa is found to exist on the Property.[7]
> Section 2. The Property is hereby declared to be an urban renewal area, in conformance with the requirements of Chapter 403 of the Code of Iowa, and is hereby designated the Osceola County Urban Renewal Area 7.
> . . . .
> Section 6. The Joint Agreement between the County and the City as has been presented to the Board is hereby approved, and the

---

[7] Iowa Code section 403.5(1) states:
> A municipality shall not approve an urban renewal project for an urban renewal area unless the governing body has, by resolution, determined the area to be a slum area, blighted area, economic development area or a combination of those areas, and designated the area as appropriate for an urban renewal project.

Chairperson and County Auditor are hereby authorized and directed to execute said agreements on behalf of the County.

Following the resolution's adoption, the board chairperson and county auditor signed the joint agreement. That same meeting, the board also gave "its initial consideration"[8] to ordinance number 47—tentatively voting to authorize the TIF and to give notice of the specific properties included in the plan. The board approved the ordinance several weeks later.

Although the joint agreement suggested it was "entered into by and between the City of Harris, Iowa and Osceola County, Iowa as of October 20, 2015," only the board signed the agreement on that date. The city council did not vote until a November 30, 2015 special meeting. Then, a formal motion "unanimously carried to enter into a written agreement with Osceola County." The final joint agreement contained this language:

> WHEREAS, in August of 2015, the City and the County entered into a verbal agreement[9] (the "Joint Agreement") with respect to the County's undertaking of the urban renewal action hereinafter described . . . .
> . . . .
> WHEREAS, at the request of the City, the County has approved this written contract to memorialize the Joint Agreement;
> NOW, THEREFORE, it is agreed by the County and the City as follows:
> . . . .
> Section 2. This Agreement is intended to memorialize the prior verbal agreement between the parties and to meet the statutory requirements of paragraph 4 of Section 403.17 of the Code of Iowa and shall be effective upon execution as of the date first listed above.

---

[8] *See* Iowa Code § 331.302(6)(a) ("A proposed ordinance or amendment shall be considered and voted on for passage at two meetings of the board prior to the meeting at which it is to be finally passed . . . .").

[9] Both parties agree the joint agreement's recitation is incorrect because the oral agreement at issue occurred at the March board meeting. Nothing in the record suggests there was another agreement in August 2015.

But before the city council held its formal vote in late November, the taxpayers petitioned for writ of certiorari and declaratory judgment against the city and county, challenging the board's October resolution. The taxpayers moved for summary judgment, asserting the claims that are now on appeal. In resistance, Harris and Osceola County claimed the taxpayers lacked standing and were untimely in filing their petition. Accepting those arguments, the district court dismissed the taxpayers' petition. But on appeal, our court reinstated the case, finding the taxpayers had standing to challenge the resolution. *Bruggeman*, 2017 WL 2464072, at *7.

On remand, the taxpayers unsuccessfully renewed their motion for summary judgment. The court ruled 1) the oral agreement between the city and county was not void, but voidable, and thus could be ratified after the fact; 2) no statute required that properties within an urban renewal area must be "contiguous"; and 3) the county did not violate the "intent, purpose, and spirit" of the law by using TIF on the wind energy conversion properties.

Based on the court's ruling, the city and county moved for summary judgment, claiming ratification of the oral agreement was sufficient to satisfy the consent requirement of section 403.17(4). The court denied the motion while acknowledging the apparent inconsistency with its previous ruling:

> In its October 11, 2017, ruling denying Plaintiffs' renewed motion for summary judgment, the Court concluded that when all facts in that summary judgment record were construed in favor of Defendants, . . . the verbal agreement between the City's mayor and the Board was a voidable contract subject to later ratification by the City's council during its meeting held on November 30, 2015. In now construing those same facts in a light most favorable to Plaintiffs, . . . the Court finds there is a genuine dispute of material fact whether that verbal

agreement was void as a contract . . . and was therefore not subject to ratification by a later vote of the City's council.

Before the trial, the parties decided to submit the case on exhibits and written arguments.[10]  In its final ruling, the district court clarified that the sole remaining question was "whether the joint oral agreement entered into by the City's mayor and the board was a voidable contract subject to ratification by the subsequent execution of a written joint agreement or whether it was a void contract not subject to ratification."

In answering that question, the court first noted the city "could have authorized [Mayor] Spaethe to enter into a verbal agreement with the Board by passing a resolution in accordance with Iowa Code Section 364.3(1)."  Despite finding the city council "clearly failed to properly exercise that authority," the court determined the oral agreement was a voidable contract subject to ratification.  So the court held that the joint agreement was valid and enforceable as of March 2015 because neither the city council nor the board ever sought to "avoid" the oral agreement.  The court thus dismissed the petition.  The taxpayers appeal.

## II.  Standard of Review

We review certiorari actions for correction of errors at law.  *State v. Iowa Dist. Ct. ex rel. Story Cnty.*, 843 N.W.2d 76, 79 (Iowa 2014).  In doing so, we "may examine only the jurisdiction of the district court and the legality of its actions." *State Pub. Def. v. Iowa Dist. Ct.*, 633 N.W.2d 280, 282 (Iowa 2001) (quoting *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998)).  A court acts

---

[10] At the parties' request, the district court held a hearing in August 2018.  The court approved the stipulation and admitted the offered exhibits into the record.

illegally when its findings are unsupported by substantial evidence or when the court has not properly applied the law. *Id.*

### III. Validity of the March 2015 Oral Agreement

This appeal poses a binary question: was the March 2015 oral agreement between the mayor and county supervisors void or voidable? The taxpayers contend any agreement was void because the mayor did not secure authorization by a vote of the city council before approaching the supervisors. *See* Iowa Code § 364.3(1) ("A city council shall exercise a power only by the passage of a motion, a resolution, an amendment, or an ordinance."). That official action, according to the taxpayers, did not come until the city council voted to approve the joint agreement in November 2015. Pointing to that timeline, the taxpayers assert the district court acted illegally in deciding the oral agreement was a voidable contract subject to ratification.

To counter, the city and county argue the mayor *did* have proper authority. They claim "inherent" in the resolution approving the hiring of bond counsel was authority for the mayor to move toward a joint agreement for the TIF and urban renewal project. In other words, they claim the city's February resolution satisfied its obligation under section 364.3(1). Under this line of argument, even if the oral agreement was flawed, it remained valid because it was voidable rather than void. And neither the city nor the county tried to avoid it.

Our analysis starts at the intersection of chapter 403 and section 364.3(1). Chapter 403 gives broad authority to cities and counties to create urban renewal areas. *See id.* §§ 403.2, .19. At the same time, chapter 403 imposes procedural

requirements for cities and counties undertaking joint ventures. Section 403.17(4) describes one of those requirements:

> [I]n that area outside a city's boundary but within two miles of the city's boundary, *a joint agreement between the city and the county is required* allowing the county to proceed with the activities authorized under this chapter. In addition, a county may proceed with activities authorized under this chapter in an area inside the boundaries of a city, provided a joint agreement is entered into with respect to such activities between a city and a county.

(Emphasis added.)

For its part, section 364.3 limits the powers of a city. To exercise its power—for example, the power to reach a joint agreement with the county—a city must approve any action by formal vote. *See* Iowa Code § 364.3(1). "A city's compliance with Iowa Code section 364.3(1) is crucial." *City of Akron*, 659 N.W.2d at 225. If a city does not comply with the formal requirements of section 364.3(1), any contract entered into is void. *Id.*

To settle the void-versus-voidable dispute, we must decide whether the city complied with section 364.3(1) before authorizing the mayor to execute a joint agreement with the county to satisfy the requirement under section 403.17(4). Under these provisions, if the city's February resolution did not authorize the mayor's representations to the supervisors, the oral agreement was void and could not be later ratified. *See id.* But if the resolution did give the mayor the power to contract, the oral agreement was voidable and any defects could be cured by ratification. *See City of Creston v. Barney*, No. 11-1154, 2012 WL 470169, at *2 (Iowa Ct. App. Feb. 15, 2012).

The district court flirted with the *City of Akron* holding in its ruling:

> [A]t first glance, it appears that the outcome of this case should be dictated by the legal principles and authorities set forth in the *City of Akron* case with this court concluding that the oral agreement reached between Mayor Spaethe and the Board during the Board's March 24, 2015, meeting was made in violation of Iowa Code Section 364.3(1), and thus is void.

But the court ultimately married its decision to *City of Creston*, where our court held that government contracts were voidable when the power to contract had "been clearly vested with a municipality, but it [was] irregularly or defectively exercised." 2012 WL 470169, at *2 (citations omitted).

To test the district court's determination, we compare those two cases. In *City of Akron*, a school district wanted to start its own wind energy conversion project but could not proceed without the city's help. 659 N.W.2d at 225. After several meetings between the school district and city representatives, the parties entered into a written contract requiring the city to buy electricity from the school district's wind project. *Id.* Although the city was aware of project discussions, the city administrator signed the contract without official authorization by the city council. *Id.* When a new mayor took office, the city sued the school district to invalidate the contract, claiming the council never approved the contract by motion, resolution, amendment, or ordinance. *Id.*

Although sympathetic to the school district, which relied on the contract for eighteen months, our supreme court held the contract was void because the city bypassed the formal requirements of section 364.3(1). *Id.* Deferring to the legislature, the court reasoned that a party's "good faith" intentions did not overcome the need "to observe formal requirements before obligating taxpayers to finance the affairs of city government." *Id.* at 225–26 ("A contract, unlawful for

lack of authority, is not rescued by good faith."). The court noted that the "involvement of two contracting governmental entities rather than one would elevate, not lower, the importance of compliance with the statute." *Id.*

In *City of Creston*, the city council passed a resolution authorizing the mayor and city clerk to execute a policy that required police officers to reimburse the city if the officers resigned within three years of training. 2012 WL 470169, at *1. Barney, a Creston police officer, signed an agreement containing those terms at the time of hire. *Id.* But instead of the mayor or city clerk, the chief of police executed the agreement on behalf of the city. *Id.* Soon after, the city council passed another resolution formally approving Barney's reimbursement agreement. *Id.* When Barney resigned one year later, he refused to reimburse the city, claiming his agreement was invalid because it was "signed by the chief of police, who did not have contractual authority" under section 364.3(1). *Id.* Because the city did not comply with the formal requirements of the statute at the time of execution, Barney claimed the reimbursement agreement could not be ratified. *Id.*

Rejecting Barney's claims, we found that his agreement was a valid contract because the first resolution specifically authorized the city to enter into reimbursement agreements, "such as the one signed by Barney." *Id.* at *3. Because the city council passed an authorizing resolution, we determined the agreement did not violate section 364.3(1) and was thus not void. We reasoned the procedural error of the chief of police signing the contract rather than the mayor or city clerk rendered the agreement voidable because "[t]he error occurred in implementation of the policy, not the adoption of the policy." *Id.* We held that the city council could ratify the voidable agreement by the later resolution. *Id.* at *5.

After comparing *Akron* and *Creston*, we find this case falls somewhere in the middle. On one extreme, the Akron City Council passed no resolution at all before the city administrator entered into a contract with the school district. *City of Akron*, 659 N.W.2d at 225. Here, the city council passed a resolution delegating at least some authority to the mayor and city clerk. But unlike *City of Creston*, where the resolution specifically authorized the city to enter into the type of agreement at issue, 2012 WL 470169, at *1, here, the resolution did not authorize the mayor to enter into a joint agreement with Osceola County. Instead, the resolution only delegated the duty of hiring a bond counsel for TIF financing "for the lagoon and other projects."

In its ruling, the district court acknowledged that the only formal resolution passed by the city council "on February 10, 2015, did not specifically authorize the mayor to verbally enter into a joint agreement with the County." To distinguish *City of Akron*, the court inferred that the Harris City Council "intended to confer" the mayor authority to enter into the joint agreement when it passed the February resolution. Based on that inferred intent, the court determined the city's power had been irregularly or defectively exercised. The court gave significant weight to the testimonies of the city attorney, mayor, and city clerk, showing that they all believed the mayor had authority to enter the joint agreement. But their subjective beliefs do not satisfy the formal requirements of section 364.3(1).

The district court wrongly decided the oral agreement was a voidable contract. Unlike *City of Creston*, the error here concerns the Harris City Council adopting a resolution that did not give adequate notice to the taxpayers and the

public that the mayor had the go-ahead to enter a joint agreement to launch an urban renewal project. The court's own analysis undermines its conclusion:

> [T]he court finds that the City's Council clearly could have authorized [Mayor] Spaethe to enter into a verbal agreement with the Board by passing a resolution in accordance with Iowa Code Section 364.3(1). *The City's Council clearly failed to properly exercise that authority resulting in them*, instead, directing [Mayor] Spaethe to contact and offer to meet with the Board, and then later ratifying the oral agreement . . . .

(Emphasis added.) By finding the council "clearly failed" to authorize the mayor to execute the agreement, the court acknowledged that the February resolution did not satisfy the requirements of section 364.3(1). Because the error related to the city council's failure to delegate its authority rather than implementing the joint agreement, the court's reliance on *City of Creston* was misplaced.

Under Iowa case law, "[c]ontracts with public entities are unenforceable when executed without proper approval or compliance with statutory requirements." *Serv. Emps. Int'l Union, Local 199 v. Iowa Bd. of Regents*, 928 N.W.2d 69, 77 (Iowa 2019) (citations omitted). We require public votes and formal approval of government contracts because of the importance of protecting taxpayers and safeguarding a free and open democracy. *Id.*

Applying those principles here, we find the oral agreement was void, and therefore unenforceable. *See City of Akron*, 659 N.W.2d at 225; *see also Madrid Lumber Co. v. Boone Cnty.*, 121 N.W.2d 523, 525 (Iowa 1963) ("When the legislature permits the exercise of power in a given case only in accordance with imposed restrictions, a contract entered into in violation thereof is not merely voidable but void." (citations omitted)). The oral agreement reached at the supervisors' meeting in March was void because the mayor did not have authority

under section 364.3(1). By establishing the urban renewal area before entering into a valid joint agreement, the city and county violated section 403.17(4). And as the taxpayers urged, the void agreement could not be cured by ratification. The district court erred in dismissing the taxpayers' petition. Thus we reverse and remand for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**