# IN THE COURT OF APPEALS OF IOWA

No. 21-1707
Filed October 5, 2022

**BRUHN FARMS JOINT VENTURE,**
    Plaintiff-Appellant,

**vs.**

**CINDY KUEHL, DEBRA WOODWARD, RUSSELL J. WOODWARD, and ARLEN
G. KUEHL,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Monona County, Steven J.

Andreasen, Judge.


A cotenant challenges the district court's partition in kind of heirs property.

**AFFIRMED.**


Maura Sailer of Lohman, Reitz, Sailer, Ullrich & Blazek, Denison, for

appellant.

Aaron W. Ahrendsen of Eich Werden Steger & Ahrendsen PC, Carroll, for

appellees.


Heard by Bower, C.J., Tabor, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**TABOR, Judge.**

Iowa law now favors partition in kind over petition by sale when the court is called to divide family farms. *See* Iowa Code § 651.30 (2019).[1] And that is how the district court divided the two properties owned by cotenants Alan Bruhn and his sisters, Cindy Kuehl and Debra Woodward. Applying new legislation controlling heirs property, the court awarded one parcel to Alan and the other parcel to Cindy and Debra, along with an owelty payment from Alan. Alan contends those awards were inequitable and he should have been given both farms. Because the district court properly applied the legislation and its property division was both practicable and equitable, we affirm.

## I. Facts and Prior Proceedings

Bruhn Farms Joint Venture is a family farming partnership run by Alan, his sons Jared and Calvin, and Calvin's wife Jessica.[2] Bruhn Farms is a sizable operation, farming about 9000 acres of mostly leased property. Its holdings include interests in two parcels of farmland in Monona County known as the Home Place and Meyer Farm.

A little family history will help set the stage. Alan's grandparents, Leo and Helena, bought the Home Place, about 160 acres, in 1959. They had two children, Dale and Corrine. Dale married Ruth and raised five children: Alan and his siblings

---

[1] "'Partition in kind' means a court-ordered division of property subject to partition into physically distinct and separately titled parcels." Iowa Code § 651.1(8). "'Partition by sale' means a court-ordered sale of property subject to partition." *Id.* § 651.1(7).
[2] The named party is Bruhn Farms, but we will refer to the appellant as Alan.

Evan, Byron, Cindy and Debra.[3] Dale and Ruth lived at the Home Place until 1965, when they moved the family to nearby Mapleton. For around twenty years, Leo and Helena rented the land to other farmers. In their wills, they left the Home Place in equal shares to Dale's five children, subject to a life estate in Dale. Thus, the siblings each held a one-fifth remainder interest. The Home Place, depicted for the appraisal, is below:



In 1984, Alan and his family moved back to the Home Place, residing in the acreage at the west side, along Walnut Avenue, which also separates the main expanse from a twelve-acre tract. Alan raised his family at the Home Place and plans to continue farming there with his children and possibly his grandchildren.

---

[3] Cindy's spouse is Arlen Kuehl, and Debra's spouse is Russell Woodward. The court has aggregated Cindy and Debra's individual interests for this action. *See* Iowa Code § 651.30.

In 1988, Alan and his grandparents bought a 240-acre parcel about two miles northwest of the Home Place. Alan eventually sold his half of the parcel to Leo and Helena but rented and farmed the 240 acres as one plot. As they did with the Home Place, Leo and Helena devised the north half of that parcel, called the Meyer Farm, to Dale's children subject to a life estate in Dale. Leo and Helena devised the south half to the children of their daughter Corrine, subject to a life estate in Corrine. Alan currently rents Corrine's half and plans to continue to do so. The appraiser also viewed photographs of Meyer Farm, the north half of which is depicted here:



Around 1995, Alan contemplated making improvements to the acreage and farmhouse at the Home Place but hesitated because he did not own it. With Dale's life estates in mind, Alan agreed with his siblings to exchange his remainder

interests in the rest of the Home Place and in Meyer Farm for title to the seven-acre acreage including the house and all the farm buildings.  So Alan ended up owning that acreage in fee simple, and his siblings each ended up with one-quarter remainder interests in the Home Place and Meyer Farm.  In 2011, Alan bought Evan and Byron's remainder interests.   So when Dale died in 2019, Alan had an undivided one-half interest in the two parcels, and his sisters, Cindy and Debra, each had an undivided one-quarter interest.

Unlike Alan, Cindy and Debra are admittedly not farmers and have not spent much time on either farm.  And their relationship with Alan has been strained for decades.  Since Dale's death, Alan has paid cash rent to compensate Cindy and Debra for their share of the acres that he farms.  But Cindy and Debra wanted to end that lease and gain control of their inherited property.

So in 2019, Alan petitioned for partition of the land by sale.[4]   Cindy and Debra answered that the property is "heirs property" and, by statute, should be partitioned in kind.  *See* Iowa Code § 651.1(5) (defining "heirs property").  The parties waived the cotenant-buyout statutory provision.  *See id.* § 651.29.  After that, the district court, applying new provisions of chapter 651, found the property should be partitioned in kind because that division would not result in great

---

[4] Shortly after the petition was filed, the district court appointed a referee to appraise the value of the properties.  The first appraiser, Al Fara, valued the Home Place at $1,025,000, and Meyer Farm at $702,500.  A subsequent appraisal by Daniel Comes set their values at $1,151,100 and $794,000 respectively.  The court found both appraisals credible and based on reasonable and valid methodologies. In its partition order, the court found the Home Place to be worth $1,113,270 and Meyer Farm to be worth $766,550.  Those values fell between the two appraisals but closer to Comes's figures because his assessment was done closer to trial. Neither party challenges the valuations or the resulting owelty payment on appeal.

prejudice to either party. It awarded the Home Place to Alan. And it awarded the Meyer Farm to Cindy and Debra, with each owning an undivided one-half interest. Because the Home Place is larger and was appraised higher than the Meyer Farm, the court fashioned the equitable remedy of Alan paying Cindy and Debra an owelty of $173,360.

Alan appeals.

## II.     Scope and Standards of Review

"Actions to partition real or personal property are equitable proceedings, which we review de novo." *Newhall v. Roll*, 888 N.W.2d 636, 640 (Iowa 2016); *see also* Iowa Code § 651.2; Iowa R. App. P. 6.907. "In equity cases, the trial court's findings of fact are not binding on us, but we give them weight, especially when they concern a witness's credibility." *Newhall*, 888 N.W.2d at 640. We also review the equitable remedy of owelty de novo. *Tolle v. Tolle*, No. 20-0715, 2021 WL 4593215, at *2 (Iowa Ct. App. Oct. 6, 2021). For any statutory interpretation, our review is for errors at law. *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76 (Iowa 2022).

## III.    Analysis

Alan asks us to modify the partition decree to award him both properties, subject to an owelty payment of $939,910. In the alternative, he asks that we award Bruhn Farms a twenty-year lease on the Meyer Farm and a right of first refusal to purchase that property. Before addressing his claims, we'll take a moment to discuss the backdrop to partition actions.

Partition is an equitable action available to a co-owner of real or personal property. *See Newhall*, 888 N.W.2d at 640; *see generally* Iowa Code ch. 651.

Partition may take two forms. In partition by sale, "the property is sold and the sale proceeds are distributed according to the parties' respective interests." *Newhall*, 888 N.W.2d at 640. With partition in kind, "the property is divided into parcels, and the parcels are allotted to the parties by share." *Id.* The court may order partition in kind subject to owelty payments. Iowa Code § 651.16(5); *Newhall*, 888 N.W.2d at 643 ("Owelty is an equitable remedy developed at common law and used in partition actions to equalize the value of property each party receives through the payment of a sum of money from the recipient of the higher-value property to the recipient of the lower-value property." (citation omitted)).

In *Spies v. Prybil*, our supreme court noted a historical statutory and common law preference for partition in kind. 160 N.W.2d 505, 507 (Iowa 1968). But after the enactment of the Iowa Rules of Civil Procedure in 1943, that preference was "no longer true in Iowa." *Id.* at 508. The rules created a presumption for partition by sale and placed the burden on the objecting party to overcome it. *Id.* This method of partitioning was a minority view nationally. *See Newhall*, 888 N.W.2d at 641 (discussing other states' default preference for partition in kind).

The partitioning preference shifted again in 2018 when the General Assembly created a new subchapter of Iowa Code Chapter 651 to govern the division of "heirs property." *See* 2018 Iowa Acts ch. 1108, §§ 27–32 (codified at Iowa Code §§ 651.27–.32). To get the ball rolling, the statute requires the court to determine whether a partition action involves heirs property and, if so, to inform the parties and appoint a referee to obtain a fair market value appraisal. Iowa

Code § 651.28.  The parties here agree the disputed farms qualify as heirs property.[5]

Also new: the subchapter allows a cotenant in heirs property to request partition by sale, but gives the other cotenants the opportunity to buy out the requesting party based on the property's fair market value.  *See id.* §§ 651.27, .29.  Cindy and Debra bypassed the buyout option.

Failing a buyout, the legislature shifted the presumption in heirs-property partitions to in kind: "the court shall order the heirs property to be partitioned in kind unless the court, after consideration of all factors pursuant to section 651.31, finds that partition in kind will result in great prejudice to the cotenants as a group." *Id.* § 651.30.  Those factors include:

> a. Whether the heirs property can be practicably divided among the cotenants.
> b. Whether a partition in kind will apportion the heirs property in such a way that the aggregate fair market value of the parcels resulting from the division will be materially less than the value of the heirs property if the heirs property is sold as a whole, taking into account the condition under which a court-ordered sale likely will occur.

---

[5] Heirs property is:
> real property held in tenancy in common that satisfies all of the following requirements as of the date of the filing of a partition action:
> a. There is not a recorded agreement that binds all of the cotenants that governs the partition of the property.
> b. One or more of the cotenants acquired title from a living or deceased relative.
> c. Any of the following apply:
> (1) Twenty percent or more of the interests are held by cotenants who are relatives.
> (2) Twenty percent or more of the interests are held by an individual who acquired title from a living or deceased relative.
> (3) Twenty percent or more of the cotenants are relatives.

Iowa Code § 651.1(5).  Provisions of the heirs-property subchapter control if they conflict with other provisions of chapter 651, subchapter II.  *Id.* § 651.27.

   c. Evidence of the collective duration of ownership or possession of the heirs property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other.

   d. A cotenant's sentimental attachment to the heirs property, including any attachment arising due to the heirs property having ancestral or other unique or special value to the cotenant.

   e. The lawful use being made of the heirs property by a cotenant and the degree to which the cotenant will be harmed if the cotenant cannot continue the same use of the heirs property.

   f. The degree to which a cotenant has contributed the cotenant's pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the heirs property, or has contributed to the physical improvement, maintenance, or upkeep of the heirs property.

   g. Tax consequences.

   h. Any other factors the court deems relevant.

*Id.* § 651.31(1). The court must weigh the totality of the "relevant factors and circumstances." *Id.* § 651.31(2). No single factor may be considered dispositive. *Id.* If the court decides the property should be partitioned in kind, that division is governed by the established procedure in chapter 651. *Id.* § 651.32(1). That procedure requires the appointed referee to partition the property into proposed parcels and file a report with the court. *Id.* § 651.16(1)–(4). The court must hold a hearing and afterward "may approve, modify, or disapprove the referee's report, or order the property partitioned by sale." *Id.* § 651.16(5). Thus, the court sitting in equity has the final say in the partition.[6]

  Alan challenges the district court's order for a partition in kind, giving the Home Place to him and the Meyer Farm to his sisters. He asserts that the legislature's aim in amending chapter 651 was to help preserve family farms,

---

[6] A partition by sale follows similar procedures but the referee's role is to recommend the appropriate "public or private sale process," which the court may "approve, modify, or disapprove," and in the end the court orders the referee to "offer the property for sale." Iowa Code § 651.18.

noting that the previous default to partition by sale did not account for the desire among some heirs to keep farmland in the family. Yet he contends that partition in kind does not achieve the legislature's purpose under these facts. In his words,

> Here, Alan, Jared, Calvin, and Jessica want to keep their family farm and they want to farm it. This is exactly what the legislature intended to protect. To the contrary, Cindy and Debra want their fair share but have no special attachment to the real estate. The legislature did not intend to provide protection to them in this instance.

He argues the only way to preserve the family farm is to award him both parcels. As a fallback, he asks for a modification of the decree to allow Bruhn Farms a long-term lease on the Meyer property and right of first refusal. On the other side, Cindy and Debra defend the order for partition in kind.

Before reaching the crux of the case, we address the sisters' contention that Alan failed to preserve his request for the right of first refusal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (requiring most issues to be both raised and decided at trial before we hear them on appeal). In his petition, Alan asserted the real estate "should be partitioned by sale and equitably divided between" him and his sisters. In their answer, Cindy and Debra pointed to the presumption for partition in kind. In his pretrial brief, Alan asked for an award of the Home Place to him and the Meyer Farm to Cindy and Debra, but that he be granted a long-term lease and right of first refusal to purchase that property. The district court refused to grant a twenty-year lease because it could not determine the "value of such a long-term lease above and beyond yearly rentals." The court also found it had no authority to "create" a "future possessory interest." It appears

the court did not address Alan's request for a right of first refusal.[7]  And it was his responsibility to ensure that ruling.  *See UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 60 (Iowa 2019).  So Alan did not preserve that issue.  But he did receive a ruling on his alternative request for a long-term lease.

Returning to his main claim, Alan argues he should be awarded both farms because dividing them up is inequitable: "Bruhn Farms will suffer great prejudice if it does not continue to farm the Home Place and the Meyer Farm, either by virtue of ownership or lease."  He devotes most of his briefing to the "great-prejudice" factors in section 651.31.  Problem is, under the revised statute, the court must consider the "great prejudice" factors only when weighing the presumption of partition in kind.  *See* Iowa Code § 651.30 ("[T]he court *shall order* the heirs property to be partitioned in kind *unless* the court, after consideration of all factors pursuant to section 651.31, finds that partition will result in great prejudice to the cotenants as a group." (emphasis added)).  So even if Alan could show "great prejudice" from the partition in kind, the court would then order partition by sale. *See id.* §§ 651.31, .32 (setting out two options).  Although requesting that remedy in his original petition, Alan no longer wants a partition by sale.  Instead, he relies on the factors in section 651.31 to argue that the court should have exercised its equitable powers differently.  Without authority from the statute or case law, he contends: "These statutory factors should inform the [c]ourt when crafting an equitable result."

---

[7] In a post-trial motion, Alan asked the court to declare his rights over his existing lease of Meyer Farm, due to terminate spring 2022.  The court denied the motion.

We reject Alan's contention. We decline to read meaning into the statute that is not evident from the language chosen by the legislature. *See Jahnke v. Deere & Co.*, 912 N.W.2d 136, 143 (Iowa 2018). The new statute tells the court how to proceed after it settles on partition in kind: "[T]he proceedings shall be governed by the procedures set forth in subchapter II that are applicable to partition in kind." Iowa Code § 651.32(1). That subchapter does not cross reference the "great-prejudice" factors. The district court followed the statutory guidance. It weighed each of the section 651.31 factors and found "a partition of the subject property in kind will not result in great prejudice to the cotenants as a group." In its next step, to determine the individual property awards, the court did not return to those factors. Rather, it tracked the procedure in section 651.16 to allot the partitioned parcels.[8] The district court properly applied the new statutory provisions.

So at bottom, the issue on appeal is not whether the district court correctly applied the factors in section 651.31 to determine partition in kind was appropriate. (It did.) The only question is whether the district court's partition was "equitable and practicable." Iowa Code § 651.2.

At trial, Alan advocated keeping both halves of Meyer Farm together. He explained that if the parcels were split, terracing would cut off access to parts of the north parcel (awarded to the sisters) from the south parcel, owned by their aunt

---

[8] As stated above, in a partition in kind, the referee recommends a proposed partition including owelty payments. Iowa Code § 651.16. The court then holds a hearing on the proposal with all interested parties. *Id.* § 651.16(4). "After the hearing the court may approve, modify, or disapprove the referee's report, or order the property partitioned by sale." *Id.* § 651.16(5).

Corrine. It was likely that those terraces would need to be removed or altered to farm the north and south halves as separate properties. He speculated that a new renter would have to create more end rows and eat up valuable acres to do so. And Corrine might prefer to install a fence between the properties while now the property line is invisible. Alan highlights the good relationship he maintains with Corrine and her children, who visit Alan on the farm and ride in his combine. By contrast, he asserts: "Neither Cindy nor Debra have been to the Meyer Farm, nor have they so much as driven by it." He insists that "Grandpa Leo" would not have wanted someone outside the family to farm that ground.

To counter, Cindy testified: "I know Al spoke on grandpa, and I can speak a lot about grandma." She described the sisters' personal attachment to their inherited property through their grandmother, Helena. She described Helena as a shrewd businesswoman who treated all her grandchildren equally and wanted the girls to have the same inheritance as the boys. She and Debra view the land as an investment, as Helena did, and want to manage it as "the business of farming."

Beyond the siblings, two real estate professionals weighed in. Alan Fara, the court-appointed referee, performed an appraisal and filed his report and recommendation in April 2020. In it, he advocated awarding the Home Place to Alan and the Meyer Farm to Debra and Cindy, equalizing the awards by transferring the northernmost twenty-six acres of the Home Place to Cindy and Debra. He explained,

> I took [the adjusted acres] off the north side of the farm because I thought that was the least intrusive to the rest of the farm. The farm's farmed north to south, and I guess it makes those rows shorter, but it doesn't break anything up there. It just makes the farm a little smaller.

He also included a small owelty payment of $380 to Alan. But Fara admitted "[i]deally, you know you wouldn't probably split either farm . . . because it's just so hard to split one and make it even anyway, and somebody's going to have a little odd piece somewhere . . . ." When asked whether one party could just pay the difference in value between the properties, he responded, "I would say that would be the best."

The second appraiser, Daniel Comes, made a different recommendation at trial. He suggested each party keeping one farm, but transferring the twelve-acre triangular parcel at the northwest corner of the Home Place to Cindy and Debra. At trial, Fara opposed that separation: "That twelve acres, there isn't a lot you can do with it. It's cut off by the creek, so the majority of the crop ground you have to go through neighbor's ground."

The district court decided "the two properties should be divided as is" and ordered Bruhn Farms to make an owelty payment of $173,360 to Cindy and Debra to equalize the partition. In the spirit of preserving family farms, the court declared: "Such a partition ensures that both properties remain 'in the family.'" The court continued: "Such partition also creates no practicable problems." The court recognized that the Meyer farm may need fencing or terracing work. But the court explained that any such costs were "due to the fact that the two properties are owned by different parties" not to the partition in kind. And the court pointed out that Cindy and Debra, not Alan, would bear the costs of any terracing or fencing work. The court further noted that "there is no guarantee or legal right for Bruhn Farm to continue to farm the land owned by Corrine and her children."

In the end, both parties go from having a fifty-fifty interest in both parcels to having separate farms, with an owelty payment to the sisters to account for the difference in their property's value. Under this partition in kind, both properties retain their value. Neither party is forced to contend with a "little odd piece somewhere," as appraiser Fara explained. It was equitable to allot the Home Place to Alan because, indeed, it was his home acreage. It was also equitable to allot the Meyer Farm to Cindy and Debra, even if they were not farming it personally, but saw it as investment property. As the court noted, because the sisters would be responsible for any costs involved in redoing the terraces on Meyer Farm, that complication did not weigh in Alan's favor. We conclude the court's partition of the land is both practicable and equitable.

As much as Alan is still unhappy with the equities of splitting up the farms, he urges us to view the new statutory provisions as requiring that both farms be allotted to the farming sibling. What he requests, essentially, is a court-ordered sale of the sisters' interests to him. But nothing in chapter 651 envisions that result.[9] The legislature defined partition in kind as "a court-ordered division of property subject to partition into physically distinct and separately titled parcels."

---

[9] Alan points to three cases in which courts have allowed for partition leaving one party in possession of the property and the other with a cash payment. *See Libby v. Lorrain*, 430 A.2d 37, 39–40 (Maine 1981) (authorizing a "partition by buy-out" between former paramours who bought a house together); *Henry Talmadge & Co. v. Seaboard Air Line Ry. Co.*, 152 S.E. 243, 246 (Ga. 1930) (in partitioning of union station, railroad owning land could purchase insolvent railroad's interests); *see also Reitmeier v. Kalinoski*, 631 F. Supp. 565, 578–9 (D.N.J. 1986) (finding equities favored plaintiff retaining property where he lived). But no Iowa case adopts this view. And none of the cases Alan cited involve inherited family property.

Iowa Code § 651.1(8).  Thus, both parties should end up with some measure of real property over which they hold title, not just a cash payment.

Cindy and Debra have a different read on the legislation from Alan.  They contend the purpose of reinstating a partition-in-kind presumption was to prevent one member of a farm family from forcing a sale of the whole property when the others do not want to sell and can't afford the buyout.  That interpretation makes sense.  Partition in kind allows family members to keep some part of their inherited land unlike a partition by sale where it goes to the highest bidder.

But again, Alan is no longer asking for partition by sale.  He is claiming that partition in kind need not involve any division of the property.  We do not see that option in chapter 651.  But even if the court's equitable powers include that option, the partition in kind of these two farm properties was both equitable and practicable.   And like the district court, we deny Alan's alternative request for a twenty-year lease on the Meyer Farm.  That remedy does not appear in chapter 651. Plus, a clean break between these parties is a more practicable and equitable outcome.  We affirm the court's division of the heirs property.

**AFFIRMED.**